Steven A. Christensen (USB 5190)
Cameron S. Christensen(USB 16015)
Christensen Young & Associates, PLLC
9980 South 300 West #200
Sandy, UT 84070
Telephone: (801) 676-6447
Facsimile: (888) 569-2786
steven@christensenyounglaw.com
cameron@christensenyounglaw.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **NELLIE H. CHRISTENSEN**, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>**ELISABETH DEVOS**, in her official capacity as Secretary of Education, and **UNITED STATES DEPARTMENT OF EDUCATION**<br><br><br>Defendants. | **PROPOSED CLASS ACTION COMPLAINT**<br><br>Case No. 2:19-cv-00509-DBP<br><br><br>Judge Dustin B. Pead |

COMES NOW, Plaintiff Nellie H. Christensen, on behalf of herself and all others similarly

situated nationwide, hereby files this Class Action Complaint against Elisabeth DeVos, in her

official capacity as Secretary of Education (hereinafter "DeVos"), the United States Department

of Education, and asserts the following claims under the Administrative Procedure Act ("APA")

and the Due Process Clause of the Fifth Amendment to the United States Constitution, and

1

assert and allege as follows:

## INTRODUCTION

1.      As early as 2007, Congress recognized a growing shortage of teachers and public servants as a direct result of the cost associated with obtaining a degree in public service to obtain a degree and repay the horrendous loans associated with college.

2.      On September 27, 2007, Congress enacted the College Cost Reduction and Access Act, Pub. L. 110-84.

3.      Title IV of the College Cost Reduction Act, as codified in 20 U.S.C. § 1087e(m), established the Public Service Loan Forgiveness ("PSLF") program, a federal entitlement guaranteed by Congress which mandates that the Department of Education "shall cancel the balance of interest and principal due" for qualifying loans held by public servants after 120 payments

4.      The purpose of PSLF  was and is to relieve the burden of student debt for those individuals willing to engage in public service, including, but not limited to; teachers, nurses, police officers, firefighters, and a litany of others who had made 120 qualifying payments on eligible student loans on a qualifying repayment plan, while working at a qualifying job.

5.      Millions of public servants have relied on PSLF in taking out student loans, making career choices, and deciding whether to refinance student loans.

6.      The Department of Education has failed to live properly administer the PSLF Program, letting down the very individuals it was supposed to help.

7.      The Department of Education has failed to uphold Congress's promise to the people by denying PSLF loan forgiveness to applicants on arbitrary and capricious grounds,

without any meaningful process to review erroneous decisions, or to ensure that Title IV loan servicers[1] provide accurate guidance to borrowers regarding their eligibility for loan forgiveness.

8. According to its own reports, the Department of Education had forgiven the loans of *fewer than 1%* of the borrowers applying for PSLF as of March 2019.[2]

9. The Department of Education denied a staggering 71% of the 73,554 unique PSLF applications received since October 2017 for purportedly failing to meet eligibility requirements, such as having the correct type of loan or repayment plan or employment in a qualifying job.

10. Only 518 public servants have received PSLF thus far—a negligible number compared with the estimated 32 million borrowers who, according to the Consumer Financial Protection Bureau ("CFPB"), were making payments on potentially eligible loans at the end of 2016.[3]

---

[1] "Title IV loan servicers" service loans issued under Title IV of the Higher Education Act ("HEA"), 20 U.S.C. §§ 1070 *et seq.* They include servicers known as TIVAS (Title IV Additional Servicing) Servicers: (i) Navient Corporation ("Navient") (formerly known as SLM Corporation/Sallie Mae); (ii) Nelnet Servicing, LLC ("Nelnet") (Nelnet acquired Great Lakes Educational Loan Services); and (iii) Pennsylvania Higher Ed- ucation Assistance Agency a/k/a FedLoan Servicing ("FedLoan Servicing"), as well as various not-for-profit servicers. *See* U.S. Dep't of Educ., Fed. Student Aid, *Loan Servicing Contracts*, https://studentaid.ed.gov/sa/about/data-center/business-info/contracts/loan-servicing (last visited July 16, 2019). Title IV loan servicers have a direct contractual relationship either with the Department, when servicing loans held by the Department, or with non-Departmental commercial lenders and loan holders as part of the Federal Family Education Loan ("FFEL") Program. The Department maintains oversight authority over all Title IV servicers, regardless of whether it directly contracts with them, as explained *infra*.

[2] U.S. Dep't of Educ., Fed. Student Aid, *March 2019 PSLF Report* (Mar. 31, 2019), https://studentaid.ed.gov/sa/about/data-center/student/loan-forgiveness/pslf-data (hereinafter "FSA, *March 2019 PSLF Report*") (last visited July 16, 2019).

[3] *Id.*; *see also* Consumer Fin. Prot. Bureau, *Staying On Track While Giving Back: The*

11.     In 2018, recognizing the inadequacies of the existing PSLF Program, Congress enacted an extension to PSLF, the Temporary Expanded Public Service Loan Forgiveness Program ("TEPSLF"), in an effort to provide a temporary band-aid for some of PSLF's widely recognized failures.   TEPSLF narrowly expands the qualifications for PSLF by allowing borrowers who made 120 payments in certain otherwise non-qualifying payment plans to receive loan forgiveness on a first-come, first-served basis until TEPSLF funds run out.   Like PSLF, TEPSLF mandates that the Department of Education forgive loans for those that qualify. But the Department of Education has, as with PSLF, mismanaged TEPSLF as well:  as of March 2019, only 3.6% of TEPSLF applications have been approved.[4]

12.     Public servants like Plaintiff Nellie H. Christensen are casualties of the Departments failure to administer its program as dictated by congressional mandate.

13.     In order to engage in public service as a schoolteacher, Mrs. Christensen obtained a degree in English and a Master's Degree of Education from the University of Utah.

14.     Mrs. Christensen made the requisite 120 qualifying payments starting in 2004 and in October and November of 2014 Mrs. Christensen requested the promised loan forgiveness.

15.     The Department of Education denied her requests giving her a generic response that contended she was not eligible for loan forgiveness due to "inconsistent payments" and "loan types," but refused to provide her with a precise reason for refusal to forgive her student loans under PSLF.

---

*Cost Of Student Loan Servicing Breakdowns For People Serving Their Communities* 20 n.34 (June 2017) (hereinafter "CFPB, *Staying on Track*"), https://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf.
[4] FSA, *March 2019 PSLF Report*, *supra* note 2.

16.    Despite qualifying for the loan forgiveness over four years ago, Mrs. Christensen is still paying on her loans after being declined loan forgiveness relief by the Department of Education.

17.    The Department of Education has disregarded repeated misrepresentations that the Title IV servicers have made to borrowers about what loans and loan repayment plans qualify for PSLF.

18.    The Title IV servicers repeatedly informed Plaintiff that she was "on track" for PSLF and making "qualifying" payments for PSLF, even though she did not actually know if she had qualifying loans or were not in qualifying repayment plans.

19.    Plaintiff did not learn that her payments "did not count" until years after these representations by Title IV servicers- after she had retired from public service, made 120 payments, and applied for forgiveness.

20.    Had the loan servicers given Plaintiff the correct information, she easily could have consolidated her loans, entered qualifying repayment plans, and been eligible for forgiveness under PSLF. Instead of acknowledging the Title IV servicers' misrepresentations and using its loan discharge authority to redress these errors, the Department of Education has turned a blind eye to this misconduct, even though it is well-documented, including in government reports.[5]

21.    A September 2018 Report by the Government Accountability Office ("GAO") confirms that the Department of Education has identified widespread servicer misconduct but has

---

[5] *See, e.g.*, Alexandra Hegji, Cong. Research Serv., No. R45389, *The Public Service Loan Forgiveness Program: Selected Issues* 23–25 (Oct. 29, 2018), https://fas.org/sgp/crs/misc/R45389.pdf.

not taken steps to give the servicers adequate guidance or instructions on how to administer the PSLF Program or ensure that servicers receive consistent loan payment history information from other loan servicers when borrower accounts are transferred. Nor does the Department of Education require the servicers to give borrowers accurate information on which payments qualify for PSLF—information that is critical given the long period of repayment required before any borrower can be eligible for loan forgiveness.[6]

22.     The Department of Education's Office of Inspector General ("OIG") issued its own report in early 2019, echoing the GAO's conclusions about misconduct by the Department of Education and Title IV servicers.[7]

23.     In an audit of the Federal Student Aid ("FSA") office—a division of the Department of Education—OIG found that "[f]rom January 1, 2015 through September 30, 2017, 61 percent. . . of [the] reports on FSA's oversight activities identified instances of servicer noncompliance with Federal loan servicing requirements."[8]   As a result of these violations, servicers placed borrowers on non-qualifying repayment plans or incorrectly calculated the number of monthly payments borrowers owe on their federal loans.

24.     The OIG also found that while the Department of Education is fully aware of these problems, it is doing nothing to remedy them.   According to the OIG, the Department of

---

[6] U.S. Gov't Accountability Office, GAO-18-547, *Public Service Loan Forgiveness: Ed- ucation Needs to Provide Better Information for the Loan Servicer and Borrowers* 24 (Sept. 2018) (hereinafter "GAO, *Public Service Loan Forgiveness Report*"), https://www.gao.gov/assets/700/694304.pdf.

[7] U.S. Dep't of Educ., Office of Inspector Gen., ED-OIG/A05Q0008, *Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans* (Mar. 5, 2019), https://www2.ed.gov/about/offices/list/oig/auditreports/fy2019/a05q0008.pdf (herein- after "OIG, *Federal Student Aid*").

[8] *Id.* at 4.

Education rarely, if ever, penalizes servicers for noncompliance, fails to track noncompliance, and refuses to prioritize the interests of borrowers over the interests of servicers.[9]

25.     The Department of Education's mismanagement of PSLF has harmed many Americans.

26.     Plaintiff represents the experiences of millions of public servants harmed and injured by the Department of Education's negligence, and incompetence.

27.     Responsibility for the egregious mishandling of PSLF lies squarely at the feet of the Department of Education, which "is responsible for establishing the administrative structure necessary to fulfill the PSLF Program's goal of encouraging individuals to enter and continue in public service employment by providing loan forgiveness to borrowers who meet program requirements."[10]

28.     At her confirmation hearing, Secretary DeVos assured members of the Senate and the American public that under her leadership, the Department would make good on PSLF's promise to America's public servants.

29.     Secretary DeVos promised that, "if confirmed, [she] look[ed] forward to working with Congress on ways to ensure that borrowers of Federal student loans continue to have manageable repayment options that are simple and easy to understand."[11]

---

[9] *Id*. at 2, 9-10, 17

[10] GAO, *Public Service Loan Forgiveness Report*, *supra* note 6, at 24; *see also* H. Rep. No. 110-210, at 48-49 (2007) ("The Committee believes that through increased Pell Grants, programs for better debt management and loan forgiveness, students are better able to assemble a package of debt relief to ensure a brighter future with less financial burdens. Debt burdens are particularly troublesome for public servants who often earn low salaries for their work. The policies embodied in H.R. 2669 recognize the contributions and challenges of public service, and the Committee hopes to encourage participation in these careers.").

[11] *Nomination of Betsy DeVos to Serve as Secretary of Education: Hearing of the Comm. on*

30.     Secretary DeVos told Senator Orrin Hatch that "the issue of student debt and the amount of student debt . . . is a very serious issue and one which we all have to pay very close attention to and resolve in some way," and further promised that, "[i]f confirmed, I certainly will look forward to working with you and your colleagues on ways to get after this issue."[12]

31.     Secretary DeVos assured members of the Senate and the public that she would pursue "successful implementation of the law" and "facilitate compliance with the laws that the Department is charged to enforce."[13]

32.     When asked about her commitment to PSLF, Secretary DeVos testified that, "if confirmed, [she would] faithfully implement the Higher Education Act"[14] and "ensure [the Department of Education] is appropriately answering any technical assistance request we receive from entities or individuals interested in learning more about the Public Service Loan Forgiveness program."[15]

33.     Secretary DeVos lived up to none of those promises.   Ignoring Congress's mandate, Secretary DeVos and the Department she leads have done nothing to remedy the gross mismanagement of the PSLF (including TEPSLF) Program, despite documented knowledge of these failures.   Indeed, Secretary DeVos has publicly rejected PSLF's very purpose, stating, "[w]e don't think one type of job, one type of role, should be incentivized over another."[16]

---

*Health, Education, Labor, and Pensions*, 115th Cong. 120 (Jan. 17, 2017) (hereinafter "*DeVos Nomination Hearing*"), https://www.govinfo.gov/content/con- tent/pkg/CHRG-115shrg23667/pdf/CHRG-115shrg23667.pdf.

[12] *Id.* at 24.

[13] *Id*. at 98.

[14] *Id*. at 120.  As explained below, the Higher Education Act of 1965 was amended by the College Cost Reduction and Access Act of 2007, which created PSLF.

[15] *Id*. at 177.

[16] *Examining Policies and Priorities of the U.S. Dep't of Educ.: Hearing Before the House Comm. on Educ. and Labor*, 116th Cong. (Apr. 10, 2019) at 04:01:57 (testimony of Betsy DeVos,

Secretary DeVos "propose[d] eliminating Public Service Loan Forgiveness" going forward,[17] and the Trump Administration proposed that appropriations for the PSLF Program be eliminated entirely in the 2020 budget.[18]

34.     Secretary DeVos, the Department, and the Trump Administration cannot disregard the Constitution and federal law by blocking the overwhelming majority of public servants from obtaining the benefits to which they are entitled under PSLF and TEPSLF.  They must implement PSLF and TEPSLF in a manner that provides public servants a meaningful chance to secure the benefits made available by Congress.

35.     The Due Process Clause of the Fifth Amendment requires the Department of Education to provide processes that give PSLF and TEPSLF applicants notice and a meaningful opportunity to be heard on issues affecting their eligibility for this statutorily granted entitlement.

36.     The APA requires the Department of Education to engage in reasoned decision-making, to consider all essential facts, and to provide an adequate explanation for its decisions to deny public servants benefits under PSLF and TEPSLF.

37.     The Department of Education's administrative process is practically nonexistent. The Department of Education consistently makes administrative mistakes on such routine matters as counting the number of qualifying payments, and the Title IV servicers misrepresent PSLF's eligibility requirements when borrowers ask how they can obtain loan forgiveness. The Department of Education then fails to consider evidence of these pervasive errors or misrepresentations in making eligibility determinations and, to make matters worse, its denials provide no meaningful explanation of the reasons for rejection.

38.     Borrowers who should qualify for PSLF or TEPSLF, including Plaintiff and class

---

Secretary of Education), https://www.c-span.org/video/?459644-1/education-policy-hearing-secretary-devos (last visited July 16, 2019).

[17] *Id.*

[18] Annie Nova, *Education Dept. faces 10% funding cut under Trump's 2020 budget proposal*, CNBC (Mar. 11, 2019), https://www.cnbc.com/2019/03/11/trumps-budget-  proposal-would-cancel-public-service-loan-forgiveness.html   (last visited July 16, 2019).

members, have not received forgiveness for reasons completely outside their control. The Department of Education has eviscerated the statutory promise of loan forgiveness for those who have spent a decade or more in public service dutifully repaying their loans. Plaintiff brings this action to require the Department of Education to fulfill its mandate to lawfully administer the PSLF Program, including TEPSLF.

## PLAINTIFF

39.    Plaintiff Nellie H. Christensen is a resident of Utah who was a public servant as a teacher in the Granite School District for over ten years. Her education was only achievable through loans, which she was informed if she made 120 payments, as a public servant, the remaining balance would be forgiven.

40.    Plaintiff has spoken with numerous colleagues who have experienced the same scenario, and as reported by numerous governmental agencies, there are millions of other public servants, in many sectors of society who received the same promises, and have not had their loans forgiven after making the mandatory payments.

41.    The American Federation of Teachers ("AFT") is a membership organization representing 1.7 million pre-K-through-12th-grade teachers, early childhood educators, paraprofessionals, and other school-related personnel; higher education faculty and professional staff; federal, state, and local government employees; and nurses and other healthcare professionals.

42.    A survey of AFT's members showed that eight out of every ten respondents who struggle financially consider student loan debt a "major burden or challenge."[19]   Many AFT members report being unable to afford basic household needs, including food, rent, and other necessities, because of the burden of their student loans.[20]   Some members even reported suicidal tendencies related to the crushing weight of student loan debt.

---

[19] Hart Research Association, *Effects of Debt on AFT Members Who Struggle Financially* 3 (June 2018), https://www.aft.org/sites/default/files/ppt_aft-member- debt_hart2018.pdf.
[20] *Id*. at 3, 14.

43.     Plaintiff is a retired public schoolteacher who worked and resides in Utah. She has made at least 120 payments on her loans.

44.     The Title IV servicer, Nelnet, and the Department of Education mislead Mrs. Christensen regarding her FFEL Loans and PSLF.

45.     When she applied for PSLF, the Department of Education denied her application, her servicer then advised her to consolidate all of her loans into a Direct Consolidation Loan, even though Mrs. Christensen had been in repayment on her Direct Loans on a qualifying repayment plan. After consolidating her FFEL Loans with her Direct Loans, Mrs. Christensen lost years of qualifying payments on her Direct Loans.

## DEFENDANTS

46.     Defendant Elisabeth DeVos, in her capacity as Secretary of the Department of Education, is responsible for administering the federal student loan program, including PSLF and TEPSLF.  Secretary DeVos is "authorized to make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by, the Department."[21]

47.     Secretary DeVos maintains an office at the Department's headquarters, located at 400 Maryland Avenue S.W., Washington, D.C. 20202.

48.     Defendant United States Department of Education is a federal agency headquartered in the District of Columbia.  Its principal office is located at 400 Maryland Avenue S.W., Washington, D.C. 20202.

## JURISDICTION

49.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1332 because it is a case arising under federal law.

50.     The relief requested herein is authorized by the Administrative Procedure Act, 5 U.S.C. § 702, and the Court's authority to enjoin federal officers from violating the U.S.

---

[21] 20 U.S.C. § 1221e-3.

Constitution and federal law.

51.     Congress has waived sovereign immunity as to the relief requested pursuant to 5 U.S.C. § 702, and sovereign immunity does not bar Plaintiffs from securing relief for the Fifth Amendment Due Process Clause violations alleged herein.

52.     Defendants' actions complained of herein with respect to each Individual Plaintiff constitute final agency actions,[22] and no further exhaustion of remedies is required by 20 U.S.C. § 1087e(m), the Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, § 315, 132 Stat. 348, 752-53, or applicable Department of Education regulations, as Plaintiff and class members was denied PSLF (including TEPSLF where applicable) when he or she applied.[23]

53.     In addition, exhaustion is not required because it would be futile.[24]   As explained below, Plaintiff, and each member of the class, has availed himself or herself of any available procedures to cure the denials without success.

54.     Defendants' actions give rise to an actual case or controversy within the meaning of Article III of the U.S. Constitution.

55.     Plaintiff, and individual class members, have Article III standing to assert APA claims and claims under the Due Process Clause of the Fifth Amendment as set forth below:

    a.  The Department of Education's denials of Plaintiffs', and class members
        applications for PSLF (including TEPSLF) and the deprivation of their

_____

[22] *See* 34 C.F.R. § 685.219(e)(3); *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 19-24 (D.D.C. 2019).
[23] *See* 34 C.F.R. § 685.219(e)(3); *see also Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (exhaustion is a "prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review").
[24] *See Am. Fed'n of Gov't Emps. v. Acree*, 475 F.2d 1289, 1292 (D.C. Cir. 1973) (no requirement to exhaust administrative remedies when doing so would be "an exercise in futility").

property interest in PSLF without due process of law are concrete injuries-in-fact.

b. Plaintiff and individual class members, have an ongoing need for loan forgiveness because their federal student loan balances remain outstanding.

c. Should they reapply, Plaintiff and class members are likely to be denied PSLF (including TEPSLF) in the imminent future, without sufficient process.

d. Plaintiff and class members' concrete injuries-in-fact are fairly traceable to the challenged actions, namely the Department of Education's denials of individual Plaintiffs' applications for PSLF (including TEPSLF).

e. Plaintiff and class members' concrete injuries are redressable by a decision of this Court: (i) declaring that the Department of Education's PSLF and TEPSLF denials violate the APA and the Due Process Clause; (ii) declaring that the Department of Education's PSLF and TEPSLF application processes deprive Plaintiff and class members of their constitutional right to due process; (iii) vacating the Department of Education's PSLF and TEPSLF denials with respect to each of the Individual Plaintiffs; (iv) remanding to the Department of Education with directions to approve each of the Plaintiffs' and class members' request for forgiveness, or, in the alternative, retaining jurisdiction and remanding to the Department of Education for further action consistent with the APA; (v) requiring the Department of Education to provide Plaintiff and class members with a decision-making process that minimizes the risk of erroneous denials and ensures a meaningful opportunity to contest denials; and (vi) requiring the Department of Education to issue a written, reasoned decision to Plaintiff and class members for any denials within a reasonable time thereafter.

56. This matter is brought by Plaintiff on behalf of herself and those similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

57. The Class that Plaintiff seeks to represent is defined as all persons who obtained student loans in order to obtain higher education to qualify for public service jobs, including, but not limited to: teachers, nurses, police officers, firefighters, *etc*.; who used non-Department commercial lenders as part of the Federal Family Education Loan Program (FFEL); who used servicers, including, but not limited to

a. Navient Corporation, formerly known as SLM Corporation/Sallie Mae;

b.      Nelnet Servicing, LLC;

c.      Pennsylvania Higher Education Assistance Agency a/k/a FedLoan Servicing,

UHEEA, *etc*.;

individuals who incurred student debt in order to qualify for public service jobs; individuals who made 120 qualifying payments on eligible student loans while working at a qualifying job.

58.      **Numerosity/Impracticability of Joinder:** The members of the Class are so numerous that joinder of all members would be impractical. The proposed Class likely contains millions of members. The precise numbers of members can be ascertained through discovery, which will include Defendants' records.

59.      **Commonality and Predominance:** There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.

60.      For Plaintiff and the Class, the common legal and factual questions include, but are not limited to the following:

a.      Whether or not 20 U.S.C. § 1087 e(m) mandating that the Department of Education cancel the balance of interest and principal due on qualifying loans held by public servants after making 120 payments has been adhered to by the Department of Education;

b.      Whether Title IV loan servicers provided accurate guidance to borrowers regarding their eligibility for loan forgiveness;

c.      Whether the Department of Education has engaged in arbitrary and capricious agency action in processing errors pursuant to 5 U.S.C. § 706(2)(A);

d.      Whether the Department of Education gave inadequate notice of denials pursuant to 5

U.S.C. § 555 e to persons seeking loan forgiveness;

e.  Whether it was a violation of Due Process due to administrative processing errors pursuant to the Fifth Amendment to the U.S. Constitution;

f.  Whether the actions of the Department of Education and Title IV loan servicers, were arbitrary and capricious agency actions due to servicer misconduct, pursuant to 5 U.S.C. § 706(2);

g.  Whether the Department of Education and Title IV loan servicers violated the Due Process Clause through servicer misconduct pursuant to U.S. Constitution;

h.  Whether the Department of Education has acted in a negligent, arbitrary and capricious action in failing to adhere to the Congressional dictates, and directions on providing student loan forgiveness to qualifying students entering public servant professions;

i.  Whether the Department of Education knew, or should have known that the Title IV loan servicers were providing inaccurate, deceptive information to student borrowers;

j.  Whether the Department of Education knew, or should have known that Title IV loan servicers were omitting, concealing or intentionally misleading student borrowers regarding material facts from their communications and disclosures to Plaintiff and the Class regarding the costs, benefits, and policies surrounding PSLF;

k.  Whether the Department of Education and the Title IV loan servicers engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices;

l.  Whether the Department of Education, and the Title IV loan servicers actions violated

consumer protection statutes;

m.  Whether Plaintiff and the Class have suffered damages; and if so, the appropriate amount thereof;

n.  Whether the Department of Education's denials of the Plaintiffs' and Class members PSLF (including TEPSLF) applications violate the Administrative Procedure Act and violate the Fifth Amendment's Due Process Clause;

o.  Whether the Department of Education's PSLF (including TEPSLF) application processes deprive Plaintiff and Class Members of their constitutional right to due process by depriving them of a protected property right in PSLF;

p.  Whether the Court should vacate the Department of Education's PSLF denial actions with respect to Plaintiff and Class Members applications for loan forgiveness;

q.  Whether the Court should remand to the Department of Education, with directions that the Department of Education approve each of the Class Members, and Plaintiffs' requests for forgiveness, and whether under 20 U.S.C. 1087e(m) or the Department of Education's general discharge authority, or whether in the Court should retain jurisdiction for further action with respect to each Class Member and Plaintiff consistent with the APA.

r.  Whether the Department of Education should be required to provide notice to all Class Members who submitted PSLF and TEPSLF applications, which were denied relief sufficient notice and information to enable applicants  notice to any and all applicants denied PSLF (including TEPSLF) relief sufficient to enable the applicant to determine the reason for such denial including, but not limited to, information concerning the

months of alleged missed or disqualifying payments and the specific reasons the

Department of Education did not count those payments, or any other basis for the

denial.

61. **Adequacy:** Plaintiff is a representative who will fully and adequately assert and

protect the interests of the Class, and have retained class counsel who are experienced and

qualified in prosecuting class actions.  Neither Plaintiff nor her attorneys have any interests

contrary to or in conflict with the Class.

62. **Superiority:** A class action is superior to all other available methods for the fair

and efficient adjudication of this lawsuit, because individual litigation of the claims of all

members of the Class is economically unfeasible and procedurally impracticable.  While the

aggregate damages sustained by the Class are likely in the millions of dollars, the individual

damages incurred by each Class member could be too small to warrant the expense of individual

suits.  The likelihood of individual Class members prosecuting their own separate claims is

remote, and even if every member of the Class could afford individual litigation, the court system

would be unduly burdened by individual litigation of such cases.  Further, individual members of

the Class do not have a significant interest in individually controlling the prosecution of separate

actions, and individualized litigation would also result in varying, inconsistent, or contradictory

judgments and would magnify the delay and expense to all of the parties and the court system

because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to

be encountered in the management of this action that would preclude its maintenance as a class

action. In addition, the Department of Education has refused to follow Congressional direction

and has acted or refused to act on grounds generally applicable to the Class and, as such, final

injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

63.     Plaintiff does not anticipate any difficulty in the management of this litigation.

64.     The Department of Education has, or has access to, address and/or other contact information for the Members of the Class, which may be used for the purpose of providing notice of the pendency of this action.

## VENUE

65.     Venue is proper in the District Court for the District of Utah pursuant to 28 U.S.C. § 1391 because Plaintiff and numerous Class Members reside in the State of Utah, and the Department of Education conducts business within the State of Utah.

## FACTUAL ALLEGATIONS

66.     Congress created the Department of Education ("The Department") as a cabinet-level department in 1979 to oversee federal education programs because education "is too important to be mismanaged or denigrated within the federal government structure."[25]  The Department's role includes "guaranteeing equal access to educational opportunities" and "maintaining significant higher education loan and grant programs to open doors for all students desiring to continue their education beyond public school."[26]

67.     The founding purposes of the Department include:

  a.  "[T]o strengthen the Federal commitment to ensuring access to equal educational opportunity for every individual;" [27]
  b.   "[T]o  improve the management and efficiency of Federal education

---

[25] S. Rep. No. 96-49 (1979).
[26] *Id.*
[27] 20 U.S.C. § 3402(1).

activities, especially with respect to the process, procedures, and administrative structures for the dispersal of Federal funds; . . ."[28] and

c.  "[T]o increase the accountability of Federal education programs to the President, the Congress, and the public." [29]

68.     In signing the Higher Education Act ("HEA") of 1965, which substantially expanded access to educational borrowing, President Johnson pledged that it would "swing open a new door for the young people of America," so that a student "anywhere in this great land of ours can apply to any college or any university in any of the 50 states and not be turned away because his family is poor."[30]

69.     Today, the Department is one of the world's largest lenders, with a "consumer loan portfolio . . . larger than [that of] J.P. Morgan and Bank of America."[31]

70.     As of 2018, the Department of Education's assets totaled $1.328 billion, over 90% of which is student loan receivables under the FFEL and Direct Loan Programs.[32]

71.     The Department of Education's Office of Federal Student Aid ("FSA") is a performance-based[33] organization within the Department of Education, with a congressional

---

[28] 20 U.S.C. § 3401(6).

[29] 20 U.S.C. § 3402(7).

[30] President Johnson, *Remarks Upon Signing the Higher Education Act of 1965* (Nov. 8, 1965), https://lbjmuseum.com/higher-education-act-of-1965/ (last visited July 16, 2019).

[31] *Examining Policies and Priorities of the U.S. Dep't of Educ.: Hearing Before the House Comm. on Educ. and Labor*, 116th Cong. 5 (Apr. 10, 2019) (statement by Betsy DeVos, Secretary of Education), https://edlabor.house.gov/imo/media/doc/Secretar- yDeVosTestimony041019.pdf.

[32] *See* U.S. Dep't of Educ., *FY2018 Agency Financial Report* 9 (Nov. 15, 2018), https://www2.ed.gov/about/reports/annual/2018report/agency-financial-report.pdf (hereinafter "DOE, *FY2018 Agency Financial Report*").

[33] In the 1990s, the GAO designated FSA as a "high-risk agency with longstanding management problems." Then in 1998, to improve the efficiency and effectiveness of FSA and to mitigate the mishandling of limited resources moving forward, Congress converted it to a performance-based organization that would have to meet specific objectives under the HEA. *See Federal Student Aid: Performance-Based Organiza- tion Review: Joint Hearing Before the*

mandate "to improve service to students and other participants in [federal] student financial assistance programs . . . , including making those programs more understandable to students and their parents" and "to increase the accountability of the officials responsible for administering the operational aspects of these programs."[34]  FSA is responsible for administering and overseeing aid programs created by Title IV of the Higher Education Act. Under the HEA, the Secretary maintains "responsibility for the development and promulgation of policy and regulations" relating to the student financial assistance programs.  Secretary DeVos also has statutory authority to direct FSA, as a "discrete management unit" within the Department, to exercise oversight of federal student loan servicers.[35]

72.     Two federal student financial assistance programs are relevant here— the Federal Family Education Loan Program ("FFEL Program") and the William D. Ford Direct Student Loan Program ("Direct Loan Program").

73.     Until 1993, all federal student loans were FFEL Loans, originated and funded almost exclusively by private lenders, insured by guaranty agencies, and reinsured by the federal government.  In 1993, through the Direct Loan Program, the federal government began originating loans directly to borrowers.   The FFEL and Direct Loan Programs operated in tandem until 2008, at which point the FFEL Program was terminated and the Direct Loan Program expanded.[36]  Although borrowers are still repaying FFEL Loans, no new FFEL Loans

---

*Subcomm. on Gov't Operations of the Comm. on Oversight and Gov't Reform*, 114th Cong. 5 (Nov. 18, 2015) (statement of Hon. Vir- ginia Foxx, Chairwoman of the Subcomm. on Higher Educ. and Workforce Training)
[34] 20 U.S.C. § 1018(a)(2).
[35] 20 U.S.C. § 1018(a)(1).
[36] Eric M. Fink and Roland Zullo, *Federal Student Loan Servicing: Contract Problems and Public Solutions* 4 (June 25, 2014), http://emfink.net/publications/Stu- dent_Loan_Servicing.pdf.

have been issued since June 30, 2010.[37]

74.     The standard repayment term for FFEL and Direct Loans is ten years, but there are several available repayment plans with various eligibility requirements and terms, including graduated payment amounts, payments spread over 25 years, and income-driven repayment plans, which tailor repayment obligations to the borrower's income and family size.[38]

### The Role of Federal Student Loan Servicers

75.     The statute establishing the FFEL Program authorizes an eligible lender or guaranty agency to "contract[] with another entity to perform any of the lender's or agency's functions [concerning loan programs], or otherwise delegate[] the performance of such functions to such other entity."[39]  Such delegation does not "relieve the Secretary of responsibility for the administration of such functions."[40]

76.     The Department of Education has oversight authority over all Title IV servicers, including servicers of commercially held FFEL Loans.[41]  The Department of Education's implementing regulations "apply to [any] third-party servicer that violates any statutory provision governing the FFEL programs or any regulations, special arrangements, agreements, or

---

[37] See DOE, *FY2018 Agency Financial Report*, *supra* note 35, at 35.
[38] Income-driven repayment plans are available for both FFEL and Direct Loan borrowers.  *See* 34 C.F.R. §§ 682.209, 682.215.
[39] 20 U.S.C. § 1086(a).
[40] 20 U.S.C. § 3472.
[41] See U.S. Dep't of Educ., Fed. Student Aid, *Functional Statement*, https://www2.ed.gov/about/offices/list/om/fs_po/fsa/program.html#fiog (last visited July 16, 2019) (The "Financial Institution Oversight Service Group (FIOSG) is respon- sible for administering a program of oversight of . . . servicers participating in the [FFEL] Program," "program reviews of . . . servicers," and "monitor[ing of] . . . ser- vicers to obtain early warning and/or confirmation of issues related to program com- pliance . . . .") (last visited July 16, 2019).

limitations entered into under the authority of statutes applicable to Title IV of the HEA

prescribed under the FFEL programs."[42]

77.     The statute establishing the Direct Loan Program authorizes the Department

of Education  to enter into direct contracts for "the servicing and collection of loans made or

purchased."[43]

78.     Currently, the Department of Education contracts with nine FFEL and Direct

student loan servicers to manage its approximately $1.5 trillion student loan portfolio.[44]

79.     Again, such delegation does not "relieve the Secretary of responsibility for the

administration of such functions."[45]

80.     According to the Department of Education, student loan servicers "are

responsible for collecting payments on a loan, advising borrowers on resources and benefits to

better manage their federal student loan obligations, responding to customer service inquiries,

and performing other administrative tasks associated with maintaining a loan on behalf of [the

Department of Education]."[46]

81.     The Department of Education informs borrowers that they can rely on their

servicer to help choose the best loan repayment option for them.  The Department of Education's

---

[42] 34 C.F.R. § 682.700(a); *see also* 34 C.F.R. § 682.203(a).

[43] 20 U.S.C. § 1087f(b)(2).

[44] GAO, *Public Service Loan Forgiveness Report*, *supra* note 6, at 3-4; *see also* Post-secondary National Policy Institute, *Issue Primers, Federal Student Loan Servicers* Fig. 7 (Mar. 8, 2019), http://pnpi.org/federal-student-loan-servicing/ (last visited July 16, 2019).

[45] 20 U.S.C. § 3472.

[46] U.S. Dep't of Educ., Fed. Student Aid, *Loan Servicing Contracts*, https://studen-taid.ed.gov/sa/about/data-center/business-info/contracts/loan-servicing (last  visited  July  16, 2019).

website tells borrowers:  "Before you apply for an income-driven repayment plan, contact your loan servicer if you have any questions.  Your loan servicer will help you decide whether one of these plans is right for you."[47]

82.    The Department of Education also informs borrowers that "[t]he loan servicer will work with you on repayment plans and loan consolidation and will assist you with other tasks related to your federal student loan."[48]

83.    The Department of Education  expressly requires  loan servicers  to assist with forgiveness programs, including PSLF and TEPSLF:  "All contracted federal student loan servicers  are  responsible for . . .  communicating  with  borrowers  about  the  general availability of the program and enrolling borrowers in selected repayment plans that may enable them to qualify for PSLF."[49]

## THE PUBLIC SERVICE LOAN FORGIVENESS PROGRAM

84.    Congress created the PSLF Program in 2007 to assist students who want "to pursue a career in public service and be able to take those jobs . . . often at lower pay" by "relieving them of the huge burden of debt they face."[50]

85.    Senator Edward Kennedy remarked on the Senate floor when the final bill was approved:

>    It is the desire of so many of these young people to be involved
>    in  public  service  and  to  help  respond  to  the  needs  in  their

---

[47]  U.S. Dep't of Educ., Fed. Student Aid, *Income-Driven Plans*, https://studen-taid.ed.gov/sa/repay-loans/understand/plans/income-driven (last visited July 16, 2019).

[48]  U.S. Dep't of Educ., Fed. Student Aid, *Loan Servicers*, https://studen- taid.ed.gov/sa/repay-loans/understand/servicers (last visited July 16, 2019).

[49]  *See, e.g.*, Hegji, *supra* note 5, at 22.

[50]  153 Cong. Rec. S11,245 (daily ed. Sept. 7, 2007) (statement of Sen. Sherrod Brown).

> communities.  They want to be part of the solution, not part of the
> problem.   So often, because of their indebtedness, they have to
> choose careers in order to deal with the indebtedness.  So this
> legislation will open up or help us take advantage of that
> idealism that is out there. We are giving them a pathway to
> making a difference in terms of the future of our country, and I
> think that is enormously important.   That is one of the most
> important parts of this legislation.[51]

86.     To accomplish this goal, Congress mandated that the Secretary "shall cancel"

the remaining balance of all Federal Direct Loans for borrowers who meet the designated PSLF

criteria.[52]

87.     The PSLF implementing regulations explain that "[t]he Public Service Loan

Forgiveness Program is intended to encourage individuals to enter and continue in full-time

public service employment."[53]

88.     Lawmakers of both parties have enthusiastically supported PSLF, recognizing

that public servants "work tirelessly and, far too often, for much less pay than they deserve."[54]

89.     Members of Congress report that, according to their constituents—including

teachers, firefighters, police officers, military veterans, prosecutors, social workers, doctors,

nurses, veterinarians, and charitable employees—"PSLF has transformed their workplaces.  It

helps recruit and retain top talent, making workforces more efficient . . ." and "provides the

financial feasibility [borrowers] need to dedicate their careers to serving our communities in

---

[51] 153 Cong. Rec. S11, 258 (daily ed. Sept. 7, 2007) (statement of Sen. Edward M. Kennedy).
[52] 20 U.S.C. § 1087e(m)(1).
[53] 34 C.F.R. § 685.219(a).
[54] Letter from Tim Kaine (D-VA) and 3 other Democratic lawmakers to the Secretary of Education (June 19, 2018), https://www.kaine.senate.gov/imo/media/doc/Kaine, %20Whitehouse,%20Duckworth,%20Hassan%20Press%20DeVos%20On%20Failure %20To%20Implement%20Public%20Service%20Loan%20Forgiveness%20Fix.pdf.

a  public service capacity."[55]

90.     Likewise, the Department of Defense reports that "PSLF has been an important recruitment and retention tool for the military."[56]

91.     The Department of Education's data shows that low-to-moderate income borrowers should benefit most significantly from PSLF.[57]  In 2016, the Department of Education reported that nearly two thirds of borrowers on income-driven repayment plans who intended to pursue PSLF earned less than $50,000 per year.[58]

### PSLF Program Requirements

92.     The College Cost Reduction and Access Act ("CCRAA") outlines the requirements for PSLF.   Section 455 of the CCRAA mandates that "[t]he Secretary shall cancel the balance of interest and p r i n c i p a l due . . . on any eligible Federal Direct Loan not in default for a borrower who[:]

   (A)     has made 120 monthly payments on the eligible Federal Direct Loan after October 1, 2007, pursuant to [an income-driven repayment plan or the standard repayment plan (or a plan with a monthly payment at least equal to the standard plan)] . . . ; and

   (B)     (i)     is employed in a public service job at the time of such forgiveness;

[55] *See* Letter from Brian Fitzpatrick (R-PA) and 12 other Republican lawmakers to the Chairwoman of the House Committee on Education and the Workforce (Apr. 18, 2018), https://cqrcengage.com/nea/file/NEsIK26WZXb/PSLF-Letter-FINAL.pdf.

[56] *See* U.S. Dep't of Defense, *Information Paper* (Jan. 10, 2018), https://www.in-sidehighered.com/sites/default/server_files/media/Department-of-Defense-on-PROS- PER-Act.pdf.

[57] *See* U.S. Dep't of Educ., *Direct Loan Public Service Loan Forgiveness* 23 (July 2016), http://fsaconferences.ed.gov/conferences/library/2016/NASFAA/2016NASFAADirect-LoanPSLF.pdf.

[58] U.S. Dep't of Educ*., 2016 FSA Training Conference For Financial Aid Professionals*29 (Nov. 2016), http://fsaconferences.ed.gov/conferences/library/2016/2016FSAConf Session18.ppt.

and

(ii)     has been employed in a public service job during the period in which the borrower makes each of the 120 payments described in subparagraph (A)."[59]

93.     The Department of Education promulgated regulations implementing the PSLF Program, which establish specific requirements for loan forgiveness that track Section 455(m) of the CCRAA.[60] Pursuant to these regulations, after 120 monthly qualifying payments, "[t]he Secretary forgives the principal and accrued interest that remains on all eligible loans for which loan forgiveness is requested by the borrower."[61]

94.     In the public notice-and-comment period for these regulations, The Department received numerous comments focusing on borrowers' access to loan forgiveness and their ability to track their eligibility status.[62]

95.     In particular, "many commenters asked the Department of Education to develop a clear and simple method for the borrower, the employer, or both, to determine annually the borrower's eligibility for public service loan forgiveness."[63]

96.     In response, the Department of Education stated that it "believes that the way in which borrowers apply for and document their eligibility for the public service loan forgiveness benefit is best handled administratively.   We assure the commenters that we will continue to examine ways to assist borrowers who are interested in, or already employed in public service, to

---

[59] CCRAA § 455(m) (codified at 20 U.S.C. § 1087e(m)).
[60] 34 C.F.R. § 685.219.
[61] 34 C.F.R. § 685.219(d).
[62] Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 73 Fed. Reg. 63,232 (Oct. 23, 2008).
[63] *Id.*

determine and document their eligibility for the loan forgiveness program."[64]

97.    While the Department of Education retains ultimate responsibility for administration of the PSLF Program,[65] one way it has attempted to handle these concerns administratively is by designating one servicer, FedLoan Servicing, as the "PSLF servicer." Importantly, however, only borrowers "declared on-track for PSLF"—as explained in step three below—"will be transferred to the PSLF servicer."[66]  Borrowers who seek loan forgiveness but have not submitted an approved Employment Certification Form ("ECF," discussed at step one below), may have their loans serviced by any of the servicers.[67]

98.    PSLF qualification is supposed to work as follows:

    a.  *First*, at the request of the borrower, FedLoan Servicing must provide the borrower with an ECF, an overview of PSLF eligibility requirements, and instructions for completing the ECF.[68]  Upon receipt of an ECF, the Department of Education conducts an initial review to verify the borrower provided all required information.  If the form is incomplete, the Department of Education will advise the borrower of the necessary steps to complete or correct the form.[69]

    b.  *Second*, The Department of Education determines whether the employer is a "qualifying public service organization" by having FedLoan Servicing

---

[64] *Id*. at 63, 241.

[65] *See, e.g.*, Compl. at ¶ 67 and Answer at ¶ 67, *Am. Bar Ass'n v. U.S. Dep't of Educ.*, No. 16-2476, Dkt. Nos. 1, 14.  The Department underscores its ultimate responsibility in a public document explaining the PSLF Program, noting that FedLoan Servicing is only "responsible for administering the Public Service Loan Forgiveness (PSLF) Program on behalf of ED." U.S. Dep't of Educ., *Public Service Loan Forgiveness: Questions and Answers for Federal Student Loan Borrowers* (Dec. 2015), *Am. Bar Ass'n v. U.S. Dep't of Educ.*, No. 16-2476, Administrative Record (hereinafter "ABA AR"), Dkt. No. 34-1, at 168.

[66] *See infra* note 77.

[67] *See supra* note 47.

[68] U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), ABA AR, Dkt. No. 34-1, at 142, 152-153.

[69] *Id*. at 153; *see also id*. at 143.

confirm that the organization is listed in The Department's database.[70]

    i.  If FedLoan Servicing cannot determine whether an employer is qualifying,[71] it must escalate the decision to The Department.[72]

  c.  *Third*, as required by The Department, FedLoan Servicing determines whether the borrower worked the requisite number of hours in a public service job.[73]

    i.  If a borrower is on track for PSLF—*i.e.*, is working the requisite number of hours in a public service job—that borrower's loans are transferred to FedLoan Servicing if they are not already serviced by FedLoan Servicing.[74]  Once a borrower's accounts are transferred,

---

[70] Qualifying employers include: (i) government organizations; (ii) not-for-profit organizations that are tax-exempt under Section 501(c)(3) of the Internal Revenue Code; and (iii) other not-for-profit organizations that are not tax-exempt but provide certain types of qualifying public services as their primary function; it excludes (a) labor unions; (b) partisan political organizations; (c) for-profit organizations; and (d) not-for-profit organizations that are not tax-exempt and do not provide a qualifying public service as their primary function.  *See* U.S. Dep't. of Educ., Fed. Student Aid, *PSLF*, https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/public-service#qualifying-employment (last visited July 7, 2019).  As an example of ED's ultimate authority as to PSLF, ED has on rare occasions authorized FedLoan Servicing "to override judgment of public service employers, per FSA authorization and on an exception basis, to make them qualifying or not qualifying employers for the Public Service Loan Forgiveness Program."  If FedLoan Servicing does so, it is required to note "the FSA-authorized condition on the borrower account."  U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), ABA AR, Dkt. No. 34-1, at 143-44.

[71] *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d at 12-13; U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), Appendix B (Instructions for Reviewing a PSLF Employment Certification form (ECF)), ABA AR, Dkt. No. 34-1, at 143, 160.

[72] According to ED's contract with FedLoan Servicing, if an employer is not deemed to be qualifying, "a borrower may request reconsideration."  Although ED's contract with FedLoan Servicing requires it to "[d]escrib[e] the actions the borrower may take . . . if the employment cannot be determined to be qualifying, or to dispute a determination, and [t]he outcome of the initial review," there are no publicly available procedures governing this supposed "reconsideration."  Answer at ¶ 64, *Am. Bar Ass'n v. U.S. Dep't of Educ.*, No. 16-2476, Dkt. No. 14; U.S. Dep't of Educ., *PSLF Single Servicer Requirements, Task Order 0005,* (Nov. 15, 2011), Amendment of Solicitation/Modification of Contract, Appendix B (Instructions for Reviewing an Employment Certification Form for PSLF) at 5.

[73] U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), Appendix B (Instructions for Reviewing a PSLF Employment Certification Form (ECF)), ABA AR, Dkt. No. 34-1, at 143, 161.

[74] *Id*. at 142, 144; U.S. Dep't of Educ., Fed. Student Aid, *PSLF*, https://studen-taid.ed.gov/sa/node/91#apply (last visited July 7, 2019).  The Department modified this process

FedLoan Servicing is to "process all forms and handle all communications regarding PSLF, as well as perform all non-PSLF related servicing functions on a borrower portfolio, as required of all federal loan servicers."[75]

ii. The Department of Education requires FedLoan Servicing to track the number of qualifying payments made by all of the borrowers it services.[76]  Both The Department and FedLoan Servicing recommend that ECFs be submitted annually so that the number of qualifying payments can be updated.[77]

iii. The Department of Education instructs borrowers:  "Collecting and submitting the Employment Certification form(s) while you are making the required 120 qualifying monthly payments will help you keep track of when you will be eligible to apply for PSLF."[78]

iv. FedLoan Servicing reviews submitted ECF forms and notifies the borrower of "the number of qualifying payments the borrower has made and the remaining number the borrower must make in order to be eligible for PSLF."[79]

d. *Fourth*, the borrower must make 120 qualifying payments toward Direct Loans to qualify for PSLF.

i. FFEL Loans must be consolidated into a Direct Consolidation Loan in order for payments to qualify under PSLF.  Any payments made prior to consolidation do not qualify.

ii. To qualify for PSLF, payments on Direct Loans must also meet

---

in July 2018 pursuant to a change order to "stop immediately transferring borrowers to FedLoan Servicing once an ECF is submitted and qualifying employment is confirmed," and instead "[l]imit[ing]" "PSLF Transfers" "to at least 96 months of Quali- fied Employment."  U.S. Dep't of Educ., Amendment of Solicitation/Modification of Contract, No. 0021P00029, (July 23, 2018) at 2-3.

[75] U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), ABA AR, Dkt. No. 34-1, at 149; *see also supra* note 77 (describing 2018 modification to timing of transfer of borrower account to FedLoan Servicing).

[76] U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), ABA AR, Dkt. No. 34-1, at 144.

[77] For example, ED advises borrowers that "[a]lthough the form is voluntary, borrow- ers are strongly encouraged to submit an ECF annually or whenever they change jobs to  help track their progress."      U.S. Dep't of Educ., Fed. Student Aid, *PSLF Data*, https://studentaid.ed.gov/sa/about/data-center/student/loan-forgiveness/pslf-data (last visited July 9, 2019).  ED also tells borrowers that submitting ECFs "will help you keep track of when you will be eligible to apply for PSLF."  U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), ABA AR, Dkt. No. 34-1, at 153.

[78] U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), ABA AR, Dkt. No. 34-1, at 152-53.

[79] *Id*. at 153, 144-46.

special requirements.  The payments must have been made after October 1, 2007, under a qualifying repayment plan, for the full amount shown on the invoice, within fifteen days of the due date, and while employed full-time by a qualifying employer.[80] Additionally, borrowers cannot make qualifying payments while their Direct Loans are in forbearance.

e.   *Fifth*, once the borrower has made 120 qualifying payments, the borrower must complete a PSLF Application for Forgiveness and must be working full-time for a qualifying employer at the time the application is submitted and at the time the remaining balance on the loan is forgiven.[81]

99.     If the borrower meets all of the above requirements, FedLoan Servicing forwards the application to the Department of Education for final review.[82]  According to the Department of Education's contract with FedLoan Servicing, "[o]nce [the Department of Education] determines whether all of the requirements for eligibility have been fulfilled, the balance of principal and interest due on the borrower's eligible Direct Loans shall be forgiven."[83]

100.    Pursuant to the PSLF implementing regulations, "[i]f the Secretary determines that the borrower does not meet the eligibility requirements for loan forgiveness under this section, the Secretary resumes collection of the loan and grants forbearance of payment on both principal and interest for the period in which collection activity was suspended.  The Secretary notifies the borrower that the application has been denied, provides the basis for the denial, and

---

[80] 34 C.F.R. § 685.219(c)(iii); *see also* U.S. Dep't of Educ., Fed. Student Aid, *PSLF*, https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/public-service#qualify (last visited July 16, 2019).

[81] Fed Loan Servicing, *PSLF*, https://myfedloan.org/borrowers/special-programs/pslf (last visited July 16, 2019).

[82] *See* Hegji, *supra* note 5, at 6.

[83] U.S. Dep't of Educ., *PSLF Single Servicer Requirements, Task Order 0005,* (Nov. 15, 2011), Amendment of Solicitation/Modification of Contract, Appendix B (Instructions for Reviewing an Employment Certification Form for PSLF) at 1-2.

informs the borrower that the Secretary will resume collection of the loan."[84]

101.     The Department of Education retains ultimate responsibility for all key steps in the process of determining eligibility. As the Department of Education acknowledges, "the Department has the ultimate authority to review FedLoan Servicing's actions under its contract."[85]  The Department of Education "has never delegated final decision-making authority under the PSLF Program to FedLoan Servicing or any other entity."[86]

102.     Critically, however, the Department of Education provides no process for a borrower to challenge or appeal the denial of PSLF, nor does the Department of Education have any process by which it reviews and corrects mistakes made by the Department of Education or Title IV servicers regarding PSLF.

103.     The CFPB estimates that approximately one in four U.S. workers is employed in public service[87] and that, "[b]y the end of 2016, more than 32 million borrowers were repaying loans that [we]re potentially eligible for PSLF."[88]

104.     Yet, according to the latest available data, as of March 2019, 73,554 unique borrowers had submitted 86,006 applications for PSLF, and only 864 applications had been approved for forgiveness. Only 518 borrowers—fewer than 1% of unique borrowers submitting applications—have had their loans forgiven.[89]  These numbers make clear that The Department has failed to fulfill its congressional mandate to administer PSLF effectively, to the detriment of

---

[84] 34 C.F.R. § 685.219(e)(3).
[85] Answer at ¶ 66, *Am. Bar Ass'n v. U.S. Dep't of Educ.*, No. 16-2476, Dkt. No. 14.
[86] Compl. at ¶ 67 and Answer at ¶ 67, *Am. Bar Ass'n v. U.S. Dep't of Educ.*, No. 16-2476, Dkt. Nos. 1, 14.
[87] *See* CFPB, *Staying on Track*, *supra* note 3, at 1
[88] *See id.* at 20 n.34.
[89] FSA, *March 2019 PSLF Report*, *supra* note 2.

the Individual Plaintiffs, AFT members, and countless public servants across the nation.

105.    Recognizing the PSLF Program's failures, in January 2018, a bipartisan group of lawmakers authorized $350 million to be available on a first-come, first- served basis as a temporary expansion of PSLF,[90] which is available to borrowers who hold Direct Loans but made some or all of their 120 payments on a non-qualifying repayment plan, and whose last 12 payments were greater or equal to what they would have paid on an income-driven repayment plan.[91]

106.    This expansion requires forgiveness if the statutory qualifications are met:  The authorizing statute provides that the Department of Education "shall develop and make available a simple method for borrowers to apply for loan cancellation under this section within 60 days of enactment of this Act."[92]

107.    FedLoan Servicing and the Department of Education instruct borrowers to apply for TEPSLF by "[p]repar[ing] an email to FedLoan Servicing requesting that The Department reconsider your eligibility for PSLF."[93]

108.    The Department of Education, through FedLoan Servicing, then reviews the

---

[90] Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 132 Stat. 424, Div. H, tit. III, § 315 (2018), 405-06, https://www.congress.gov/115/bills/hr1625/BILLS-115hr1625enr.pdf.

[91] *Id*.

[92] *Id*.  ED implemented TEPSLF through a new information collection under the Pa- perwork Reduction Act of 1995.  *See* Notice, Agency Information Collection Activities; Comment Request; Temporary Expansion of Public Service Loan Forgiveness (TEPSLF), 83 Fed. Reg. 24,091 (May 24, 2018).

[93] U.S. Dep't of Educ., Fed. Student Aid, *TEPSLF*, https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/public-service/temporary-expanded-public-service- loan-forgiveness (last visited July 16, 2019).

application and determines whether to grant TEPSLF.[94]

109.    The Department of Education provides no process for a borrower to challenge or appeal the denial of TEPSLF, nor does The Department have any process by which it reviews and corrects mistakes made by The Department or the Title IV servicers regarding TEPSLF.

110.    Although Congress intended TEPSLF to facilitate the forgiveness of certain public employee loan debt, as of the end of March 2019, only 442 requests out of 12,429 requests considered—3.6%—were approved for TEPSLF, accounting for $17,557,594 in debt relief.[95]

111.    The Department of Education's administration of TEPSLF is also a failure.

112.    The Department of Education possesses what is known as Compromise and Settlement authority, which allows the Department of Education to compromise or waive any title or claim.

113.    This power allows the Department of Education to settle with student loan borrowers who are not eligible for forgiveness because the Department of Education or the Title IV servicers have given the borrower incorrect information about how to qualify.

114.    The Department of Education's Compromise and Settlement authority for FFEL Loans is set forth in the HEA, 20 U.S.C. § 1082(a)(6), which allows the Secretary to "enforce, pay, compromise, waive, or release any right, title, claim, lien, or demand, however acquired, including any equity or any right of redemption."[96]

---

[94] *Id.*
[95] FSA, *March 2019 PSLF Report*, *supra* note 2.
[96] Under 20 U.S.C. § 1082(a)(4), the Secretary has the authority to "consent to modi- fication, with respect to rate of interest, time of payment of any installment of prin- cipal and interest or any portion thereof, or any other provision of any note or other instrument evidencing a loan

115.    The Department of Education maintains the same authority over the Direct Loan Program, [97]  and under the Department of Education's regulations, "the Secretary may compromise a debt in any amount, or suspend or terminate collection of a debt in any amount, if the debt arises under the [FFEL Program or the Direct Loan Program]."[98]

116.    There is little public information about the Department of Education's use of its Compromise and Settlement authority, but the Department of Educations has provided internal guidelines to the agencies that guaranty FFEL Loans (these agencies are called "guaranty agencies," and include state entities),[99] as well as private collection agencies ("PCAs") charged with collecting defaulted FFEL and Direct Loans.

117.    For instance, the Department of Education issued Standard Compromise and Write-Off Procedures in 1993 to the agencies that guarantee FFEL Loans, which allow for a waiver of collection costs and up to 30% of the principal and interest[100] and the Department of

---

which has been insured by the Secretary under this part."

[97] 20 U.S.C. § 1087a(b)(2).

[98] 34 C.F.R. § 30.70(e)(1); *see also* 34 C.F.R. § 30.70(e)(2) ("The Secretary refers a proposed compromise, or suspension or termination of collection, of a debt that ex- ceeds $1,000,000 and that arises under a loan program described in paragraph (e)(1) of this section to the Department of Justice for review. The Secretary does not com- promise, or suspend or terminate collection of, a debt referred to the Department of Justice for review until the Department of Justice has provided a response to that request.").

[99] *See* U.S. Dep't of Educ., Fed. Student Aid, *FFEL Program Lender and Guaranty Agency Reports*, https://studentaid.ed.gov/sa/about/data-center/lender-guaranty (last visited July 16, 2019).

[100] *See* National Consumer Law Center, *No Way Out: Student Loans, Financial Dis- tress, and the Need for Policy Reform* 18 n.40 (June 2006) (hereinafter "NCLC, *No Way Out*"), https://www.studentloanborrowerassistance.org/wp-content/uploads/ 2013/05/nowayout.pdf (citing Letter from Jean Frohlicher, President of the Council of Higher Education Loan Programs, Inc., re: Compromise and Write-Off Procedures (Nov. 7, 1993), with attached approval by Robert W. Evans, Director, Division of Policy Development (Nov. 24, 1993), and attached Standardized Compromise and Write- Off Procedures).  ED has not publicly indicated whether these guidelines are still in existence or have been modified.  *See*

Education's manual of procedures for PCAs makes clear that the Department of Education

maintains authority to enter into discretionary compromises and cancel any student loan.[101]

118.    Even though borrowers must make 120 qualifying payments to be eligible for

PSLF, the Department of Education has done nothing to ensure that borrowers' payments are

correctly counted despite documented knowledge of repeated errors with disastrous consequences

for borrowers.

119.    For example, it took almost five years after PSLF was enacted for ED to introduce

the ECF,[102] which allows borrowers to verify that their employer qualifies under the PSLF

Program, a crucial step in making sure borrowers are on track to qualify.[103]

120.    According to the GAO, the Department of Education "has not provided [FedLoan

Servicing] with a comprehensive source of guidance and instructions on how to operate the

---

Natalie Korman, *Is it Possible to Settle Student Debt for Less than You Owe?*, The College
Investor (May 23, 2019), https://thecol- legeinvestor.com/20332/settle-student-debt/ (last
visited    July    16,    2019);    Student    Loan    Borrower    Assistance,    *Settlement*,
https://www.studentloanborrowerassis- tance.org/loan-cancellation/settlement/ (last visited July
8, 2019); *see also* NCLC, *No Way Out* at 18.

[101] U.S. Dep't of Educ., Fed. Student Aid, *PCA Procedures Manual*, 55 (May 10, 2016),
https://www.studentloanborrowerassistance.org/wp-content/uploads/2013/05/pca- manual.pdf;
U.S. Dep't of Educ., Fed. Student Aid, *PCA Procedures Manual: 2009 ED CollectionsContract*
72 (Sept.2009),https://www.studentloanborrowerassis- tance.org/wp-
content/uploads/2007/03/2009-pca-procedures.pdf;  *see   also* Student Loan Borrower
Assistance, *Settlement*, https://www.studentloanborrowerassis- tance.org/loan-
cancellation/settlement/ (last visited July 16, 2019).

[102] U.S. Dep't of Educ., Fed. Student Aid., *Federal Student Aid Posts Updated Reports to FSA
Data Center* (Aug. 22, 2016), https://ifap.ed.gov/eannounce
ments/082216FSAPostsUpdatedReportstoFSADataCenter.html ("Although no borrower will be
eligible for forgiveness under this program until October 2017, the Department introduced a
voluntary Employment Certification Form in January 2012 to help borrowers track their progress
toward meeting PSLF requirements.").

[103]   *See* U.S. Dep't of Educ., Fed. Student Aid, *PSLF Data*, https://studen-
taid.ed.gov/sa/about/data-center/student/loan-forgiveness/pslf-data (last visited July 16, 2019);
U.S. Dep't of Educ., *Business Operations Change Request Form* (Sept. 30, 2011), ABA AR,
Dkt. No. 34-1, at 142

[PSLF] program, raising the risk that [FedLoan Servicing] may improperly approve or deny borrowers' certification requests and forgiveness applications."[104]

121.    The GAO's investigation concluded that "[the Department of Education] has not ensured the PSLF servicer is receiving consistent loan payment history information from other loan servicers, increasing the risk of inaccurate qualifying payment counts."[105]

122.    The GAO further found that the Department of Education has failed to provide FedLoan Servicing and borrowers with sufficient information to determine whether a borrower's employer qualifies as a public service employer, leaving FedLoan Servicing's assessments as to public service employment "vulnerable to inconsistencies" and fostering "uncertainty for borrowers" as to whether they will qualify for PSLF.[106]

123.    Specifically, although the Department of Education has identified data sources for FedLoan Servicing to consult to determine if an employer is qualifying, the GAO found that "th[os]e sources are not comprehensive," resulting in FedLoan Servicing using other sources "that have significant limitations" and "have not been fully reviewed or assessed for accuracy by ED."[107]

124.    The GAO found similar "inconsistencies in the information used for counting borrowers' qualifying loan payments," "rais[ing] the risk of errors" in the PSLF application review process.[108]

125.    In reviewing PSLF applications, FedLoan Servicing must "examine the borrower's

---

[104] GAO, *Public Service Loan Forgiveness Report*, *supra* note 6, at 24.
[105] *Id*. at 25.
[106] *Id*. at 24.
[107] *Id*. at 18.
[108] *Id*. at 25.

prior loan payment information to determine which prior payments count towards the 120 needed to qualify for loan forgiveness."[109]

126.    If FedLoan Servicing receives the borrower's account from another servicer (as is often the case), the initial servicer must transfer loan payment information to FedLoan Servicing so that the borrower's earlier payments are counted.

127.    The GAO's investigation found that this process of transferring information is replete with errors. For example, even though the Department of Education created standardized templates for servicers to use in transferring loan and prior payment information to FedLoan Servicing, these templates lack "standard definitions and terminology," "resulting in inconsistencies in the data other loan servicers report" to FedLoan Servicing.[110]

128.    When FedLoan Servicing "does not receive consistent and reliable information from other servicers," there are "inconsistencies in borrowers' payment history data,"[111] which "increase[es] the risk of inaccurate qualifying payment counts."[112]

129.    The GAO's findings on inconsistent payment counting mirror those in a 2017 report from the CFPB.

130.    According to the CFPB, borrowers have complained that "their servicer provides inaccurate counts of qualified payments" and that "their previous qualifying payments may not be reflected in the payment histories maintained by [FedLoan Servicing]."[113]

131.    FedLoan Servicing officials have stated "they rely on borrowers to catch any

---

[109] *Id*. at 21.
[110] *Id*.
[111] *Id*. at 21-22.
[112] *Id*. at 25.
[113] *See* CFPB, *Staying on Track*, *supra* note 3, at 39-40.

payment counting errors resulting from issues with information provided by other loan servicers."[114] But the GAO concluded, as outlined in the Figure below, that the risk of an inaccurate count is "compounded by the fact that [the Department of Education] does not require [FedLoan Servicing] to provide borrowers with details on which payments qualified and which did not."[115]



Figure 7: Hypothetical Example of the PSLF Servicer's Payment Counting Process and Information Shared with Borrowers

Source: GAO analysis of documents from the Department of Education and the Public Service Loan Forgiveness (PSLF) Servicer. | GAO-18-547

132.    The CFPB has also found that borrowers "struggle to get their servicer to correct [payment counting] error[s] or explain why payments were not qualified."[116] "This makes it difficult for borrowers to detect erroneous counts that could ultimately affect their eligibility for loan forgiveness."[117]

133.    The Department of Education has acknowledged that more work is required to

[114] GAO, *Public Service Loan Forgiveness Report*, *supra* note 6, at 23.
[115] *Id*. at 25.
[116] *See* CFPB, *Staying on Track*, *supra* note 3, at 39.
[117] GAO, *Public Service Loan Forgiveness Report*, *supra* note 6, at 25.

"ensure borrowers receive sufficiently detailed information regarding counts of qualifying payments and their repayment history" and claims that it is "reviewing all PSLF borrower communications to improve content and clarity."[118]  It has failed to do so.

134.    Similar problems plague the TEPSLF application process, as a number of U.S. Senators have noted in a letter to Secretary DeVos.[119]  As members of Congress have admonished Secretary DeVos, ED has not taken "any significant action to make it easier for borrowers who had ended up in the wrong repayment plans to qualify for the loan forgiveness opportunity that was created for them."[120]

135.    As the GAO concluded, this breakdown in the Department of Education's assessment of PSLF and TEPSLF applications has caused, and continues to cause, public servants "to make more payments than necessary before receiving loan forgiveness,"[121] if they receive it at all.

136.    The Department of Education's processing errors—errors wholly unrelated to the borrower's eligibility and not caused by the borrower's action or inaction—result in numerous qualified borrowers being wrongfully denied their right to PSLF.  The consequences for these borrowers—all public servants saddled with exceedingly burdensome student debt—have been

---

[118] Questions Submitted by Sen. Patty Murray Regarding PSLF Outreach and Compliance with Congressional Directive 8 (undated), https://www.help.senate.gov/imo/media/doc/SenMurrayQFRresponses32819LHHShearing.pdf.
[119] Letter from Tim Kaine (D-VA) and 3 other Democratic lawmakers to the Secretary      of       Education      (June      19,      2018), https://www.kaine.senate.gov/imo/media/doc/Kaine, %20Whitehouse,%20Duckworth%20Hassan%20Press%20DeVos%20On%20Failure %20To%20Implement%20Public%20Service%20Loan%20Forgiveness%20Fix.pdf.
[120] Letter from Tim Kaine (D-VA) and Sheldon Whitehouse (D-RI) to the Secretary of Education (Apr. 25, 2019), https://www.kaine.senate.gov/press-releases/kaine-and- whitehouse-call-on- devos-to-fix-missteps-with-implementation-of-tepslf-program (last visited July 16, 2019).
[121] GAO, *Public Service Loan Forgiveness Report*, *supra* note 6, at 25.

devastating.

137.    Nellie Christensen took out several FFEL Direct Loans to pay for her undergraduate and graduate education at the University of Utah.  Plaintiff began working as a full-time teacher in 2002 and worked for over 10 years in the Granite School District, in West Valley City, Utah.

138.    Mrs. Christensen made over 120 qualifying payments and submitted a PSLF application and was denied loan forgiveness.

139.    Thereafter, her servicer was Nelnet and she consolidated her loans through Utah Higher Education Assistance Authority ("UHEAA") and was informed by the Department of Education in 2014 that her request for PSLF was denied.

140.    Mrs. Christensen made numerous telephone calls to PSLF "specialists" who informed her she was denied relief under both PSLF and TEPSLF programs.

141.    When applying for the loans, and going through the mandatory FAFSA loan application process, she was repeatedly informed that if she became a teacher (public servant) and made 120 loan payments, that her balance and interest would be forgiven under the government's loan forgiveness plan for public servants.

142.    Based upon the representations made to her, she incurred debt and relying on the representations took out the loans necessary to acquire her undergraduate and master's degrees.

143.    Plaintiff suffered damages in loss of money in continued loan payments, as a direct and proximate result of the Department of Education's arbitrary and capricious refusal to grant Plaintiff loan forgiveness, as promised.

144.    Plaintiff is eligible for PSLF.

**DEPARTMENT OF EDUCATION'S DISREGARD OF SERVICER
MISREPRESENTATIONS TO BORROWERS REGARDING PSLF**

145.    Plaintiff contends that the Department of Education knows of—but completely disregards—repeated misrepresentations made by Title IV servicers to borrowers who are attempting to qualify for PSLF or TEPSLF, resulting in unwarranted denials of loan forgiveness.

146.    In a March 2019 report, the Department of Education disclosed that two of the most common reasons for denials of PSLF are: (1) failures to make 120 payments under a qualifying repayment plan (53% of rejections) and (2) non-eligible loans (16% of rejections).[122]

147.    Both grounds for denial are, in many instances, attributable to erroneous information that Title IV servicers provided to borrowers.

148.    Though the Department of Education has decided to delegate much of the day-to-day administration of PSLF to Title IV servicers, including the task of providing information to borrowers regarding the PSLF Program's eligibility requirements, the Department of Education retains full responsibility for implementation of PSLF, as Congress made clear.[123]

149.    Thus, the Department of Education is responsible for and obligated to address Title IV servicers' misconduct that harms PSLF-seeking borrowers.  For example, as to Title IV servicers under contract with the Department of Education, the Department of Education's Inspector General testified to Congress, "[the Department of Education] must effectively monitor performance to ensure that it receives the correct quantity and quality of products or services for which it is paying."[124]

---

[122] FSA, *March 2019 PSLF Report*, *supra* note 2.
[123] 20 U.S.C. § 3472.
[124] *Management Challenges Facing the U.S. Dep't of Educ.: Hearing Before the Sub- comm. on Labor, Health, and Human Servs., Educ., and Related Agencies*, 113th Cong. 4 (Mar. 19, 2013)

150.    The Department of Education's  contracts with those servicers recognize this too, specifying that servicers "shall provide [the Department of Education's Office of Federal Student Aid ("FSA")] the ability to monitor phone calls remotely," "shall support quarterly monitoring reviews completed by FSA," and "shall support annual program compliance reviews done by FSA, or by an agent of FSA,"[125]  and Secretary DeVos has assured Congress that the Department of Education "will continue to monitor the servicers to make sure they are upholding the agreements they have made on behalf of the students."[126]

151.    The Department of Education is well aware of the widespread misrepresentations that Title IV servicers are making to borrowers regarding eligibility for PSLF. As discussed above, both the GAO and OIG have documented not only the existence of rampant servicer misconduct, but also The Department's awareness of such misconduct.[127] And yet, the Department of Education has failed to correct the problem or take it into account in administering PSLF.

152.    In the face of this abdication of responsibility, Title IV servicers continue to mislead public servants and the magnitude of the problem continues to worsen.

153.    For instance, the OIG report found that "FSA had not established policies and procedures that provided reasonable assurance that the risk of servicer non-compliance with

(testimony of Kathleen S. Tighe, Inspector General), https://www2.ed.gov/about/offices/list/oig/auditrpts/testimony03192013.pdf.

[125] U.S. Dep't of Educ., *Additional Servicer—Intermediate Requirements,* Attachment A-2 (June 17, 2009), at 11.

[126] *Examining Policies and Priorities of the U.S. Dep't of Educ.: Hearing Before the H. Comm. on Educ. and Labor*, 116th Cong. (Apr. 10, 2019) at 00:37:38 (testimony of Betsy DeVos, Secretary of Education), https://www.c-span.org/video/?459644-1/education-policy-hearing-secretary-devos (last visited July 16, 2019).

[127] *See generally* GAO, *Public Service Loan Forgiveness Report*, *supra* note 6; OIG, *Federal Student Aid*, *supra* note 7.

requirements for servicing federally held student loans was mitigated."[128]

154.    An analysis of nearly 350 FSA monitoring reports revealed that over 60% of them documented instances of servicer noncompliance with federal requirements, "includ[ing] noncompliance with requirements relevant to forbearances, deferments, income-driven repayment, interest rates, due diligence, and consumer protection."[129]

155.    Although "FSA's oversight activities regularly identified instances of servicers not servicing federally held student loans in accordance with Federal requirements, . . . FSA management rarely used available contract accountability provisions to hold servicers accountable for instances of noncompliance."[130]

156.    The OIG further concluded that because the Department of Education "rarely hold[s] servicers accountable for instances of noncompliance with Federal loan servicing requirements, FSA is not providing servicers with incentive to take actions to mitigate the risk of continued noncompliance that harms students and their families."[131]

157.    The Department of Education's lack of enforcement as to noncompliant loan servicers indicates that the Department of Education is failing to carry out Congress's mandate of ensuring that borrowers have access to the PSLF entitlement.

158.    The 2018 GAO Report further revealed the Department of Education's glaring failures with respect to Department of Education's administration of PSLF.[132]

159.    The report found the Department of Education knew there was a high risk that

---

[128] OIG, *Federal Student Aid*, *supra* note 7.
[129] *Id*. at 4.
[130] *Id*. at 2.
[131] *Id*. at 17.
[132] *See generally* GAO, *Public Service Loan Forgiveness Report*, *supra* note 6.

FedLoan Servicing would improperly approve or deny certification requests and applications for loan forgiveness yet took no action to correct these problems.[133]

160.    The report further found that Department of Education's inaction "makes the PSLF servicer's employer assessments vulnerable to inconsistencies and fosters uncertainty for borrowers as to whether or not their employment will eventually qualify them for loan forgiveness."[134]

161.    Numerous lawsuits have been filed against Title IV servicers, alleging widespread misconduct.[135]

162.    Rather than addressing the servicer misconduct detailed in those lawsuits, the Department of Education has tried to prevent these suits from going forward by arguing— largely unsuccessfully[136]—that "State regulation of the servicing of the FFEL Program is preempted to the extent that it undermines uniform administration of the program," and that, "[t]o the extent

---

[133] *Id.* at 24.

[134] *Id.*

[135] *See, e.g.*, *Hyland v. Navient Corporation*, No. 1:18-cv-09031 (S.D.N.Y.) (filed Oct. 3, 2018); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, No. 1:17-cv-00253, 2018 WL 5621872 (N.D. Fla. Sept. 20, 2018), *pending appeal*, No. 18-14490 (11th Cir.); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:17-cv-00183, 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017), *vacated and remanded*, No. 18-01531, 2019 WL 2636822 (7th Cir. June 27, 2019); *Davis v. Navient Corp.*, No. 1:17-cv-00992 (W.D.N.Y.) (filed Oct.30, 2017); *Daniel v. Navient Solutions, LLC*, 8:17-cv-02503 (M.D. Fla.) (filed Oct. 25,2017); *Pennsylvania v. Navient Corp.*, No. 3:17-cv-01814 (M.D. Pa.) (filed Oct. 5, 2017); *Travis v. Navient Corp.*, No. 2:17-cv-04885 (E.D.N.Y.) (filed Aug. 18, 2017); *Demyanenko-Todd v. Navient Corp.*, No. 3:17-cv-00772 (M.D. Pa.) (filed May 1, 2017); *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-cv-00101 (M.D. Pa.) (filed Jan. 18, 2017); *California v. Navient Corp.*, No. 18-567732 (Cal. Super. Ct.) (filed June 29, 2018); *Illinois ex rel. Madigan v. Navient Corp.*, No. 17 CH 00761 (Ill. Cir. Ct., Cook Cty.) (filed Jan. 18, 2017); *Massachusetts v. Pennsylvania Higher Educ. Assistance Agency*, No. 1784-cv-02682-BLS2 (Mass. Super. Ct.) (filed Aug. 23, 2017); *Mississippi v. Navient Corp.*, No. 1:18-cv-00982 (Miss. Chan. 1st Dist. Ct.) (filed July 17, 2018); *Washington v. Navient Corp.*, No. 17-2-01115-1 (Wa. Super. Ct.) (filed Jan. 18, 2017)

[136] *See, e.g.*, *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, __ F. 3[rd]__, 2019 WL 2636822 (7th Cir. June 27, 2019).

that State servicing laws attempt to impose new prohibitions on misrepresentation or the omission of material information, those laws would also run afoul of the express preemption provision in 20 U.S.C. § 1098g."[137]

163.    Moreover, the Department—at the direction of Secretary DeVos—has taken measures to prevent the CFPB—the agency responsible for protecting consumers of financial services—from obtaining information necessary to oversee and police the Title IV servicers.

164.    The CFPB has authority to examine Title IV servicers and ascertain their compliance with federal law.[138]

165.    In a letter to Senator Elizabeth Warren, the head of the CFPB revealed that "[s]ince December 2017, student loan servicers have declined to produce information requested by the

---

[137] Federal Preemption and State Regulation of the Dep't of Educ.'s Fed. Student Loan Programs and Fed. Student Loan Servicers, 83 Fed. Reg. 10,619-21 (Mar. 12, 2018).

[138] The CFPB conducts reviews of student loan servicers pursuant to its statutory function to "collect[], research[], monitor[], and publish[] information relevant to the functioning of markets for consumer financial products and services to identify risks to consumers and the proper functioning of such markets." 12 U.S.C. § 5511(c)(3); *see also* CFPB, *Request for Information Regarding Student Loan Servicing*, 80 Fed. Reg. 29,302 (May 21, 2015) (relying on authority granted by 12 U.S.C. § 5511(c)). The CFPB is specifically empowered to appoint a student loan ombudsman who may "pre- pare an annual report" and "make appropriate recommendations" to the Secretary of Education regarding student loans. 12 U.S.C. § 5535. As relevant here, the CFPB "[d]etermine[s] whether the servicer has procedures, and whether the servicer follows its procedures, for circumstances where the borrower informs the servicer that a borrower is working in public service, including whether phone representatives assess the borrower's current circumstances and disclose the availability of any cancellation or loan forgiveness options reasonably believed to be the most appropriate to the borrower (e.g., PSLF, . . .)" and further "whether the servicer processes requests for bor- rower benefits, including benefits or protections . . . (e.g., PSLF . . .), in a timely and accurate manner." Consumer Fin. Prot. Bureau, *Education Loan Examination Procedures* 33 (June 2017), https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201706_cfpb_Education-Loan-Servicing-Exam-Manual.pdf. The CFPB has filed suit against one student loan servicer—Navient—pursuant to its statutory au- thority to enforce federal consumer financial laws. *See Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-cv-00101 (M.D. Pa.) (filed Jan. 18, 2017); *see also* 12 U.S.C.§§ 5564(a), (b); 15 U.S.C. §§ 1681s(b)(1)(H), 1692*l*(b)(6).

Bureau for supervisory examinations related to Direct Loans and [FFEL] [L]oans held by the Department based on the Department's guidance."[139]

166.    As reported by National Public Radio, the CFPB asserts that it "is trying to do its job protecting student borrowers and supervising loan servicing companies, but [the Department of Education] is getting in the way."[140]

167.    As a number of U.S. Senators recognized in letters sent to federal student loan servicers, this "disturbing news . . . reveals that the Department, under Secretary DeVos, has removed the most potent weapon"—the CFPB's supervisory examination authority—"from the

168.    CFPB's arsenal to fight illegal behavior and mistreatment of borrowers by student loan servicers, and that federal student loan servicers, who are paid by the federal government, are ignoring federal regulators' requests for information."[141]

169.    In the face of these widespread errors, the Department of Education has refused to exercise its oversight responsibilities, has obstructed attempts by agencies like the CFPB to rein in servicer misconduct, has failed to institute a process that allows borrowers to raise servicer misconduct in their PSLF applications, and has refused to account for Title IV servicers' misrepresentations in the PSLF review process.

170.    Plaintiff originally planned to apply after ten years of payments, however, when

---

[139] Letter from Kathleen L. Kraninger to Elizabeth Warren at 2 (Apr. 23, 2019), https://www.warren.senate.gov/imo/media/doc/2019.04.23%20KK%20to%20Warren_ student%20loan%20industry.pdf
[140] Chris Arnold, *CFPB Chief Says Education Department Is Blocking Student Loan Oversight*, National Public Radio (May 16, 2019), https://www.npr.org/2019/05/16/ 723568597/cfpb-chief-says-education-department-is-blocking-student-loan-oversight          (last visited July 16, 2019).
[141] Letters from Senators Warren, Brown, Gillibrand, Durbin, and Whitehouse to Navient Solutions, LLC, Nelnet, Inc., and Pa. Higher Educ. Assistance Agency (May 14, 2019), https://www.npr.org/documents/2019/may/letters-to-servicers.pdf.

her loans were transferred to the Title IV servicer, Nelnet, for servicing Nelnet confirmed with Plaintiff how to qualify for PSLF.

171.    Nelnet informed Plaintiff her loans would be forgiven under PSLF.

172.    Plaintiff asked Nelnet specifically about the Teacher Loan Forgiveness ("TLF") program, which forgives a portion of student loans for teachers working in eligible low-income schools for five years.

173.    Nelnet informed Mrs. Christensen that her school (Hunter High School) was considered a Title 1, low income school.

174.    TLF is available after five years of teaching in qualifying schools, regardless of whether a teacher remains at the same school.

175.    Due to the misrepresentations by Nelnet representatives, including failing to inform her that any qualifying payments toward TLF, she continued to be misinformed and did not receive relief under either the TLF or PSLF programs.

176.    The Department of Education has failed to institute any adequate process to consider applications for loan forgiveness that identifies and takes into account Nelnet's and other servicers blatant misleading misrepresentations about qualifying for PSLF.

177.    The Department of Education's denial of Plaintiff's application for loan forgiveness is arbitrary and capricious in that it fails to take into account the Title IV servicer's misrepresentations.

178.    But for servicer misconduct, and misrepresentations Plaintiff and other Class Members payments of over 120 qualifying payments for PSLF should have been sufficient for loan forgiveness.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### ARBITRARY AND CAPRICIOUS AGENCY ACTION DUE TO ADMINISTRATIVE PROCESSING ERRORS PURSUANT TO 5 U.S.C. § 706(2)(A) (ADMINISTRATIVE ERROR PLAINTIFFS AGAINST DEFENDANTS)

179.   Plaintiff incorporates by reference all allegations contained in the preceding paragraphs (and all subparts thereto) as if set forth fully herein.

180.   The Department denied Plaintiffs' applications for relief under PSLF and TEPSLF.

181.   The Department of Education's decisions with respect to the Administrative Error in denying Plaintiffs application under PSLF and TEPSLF applications constituted final agency action.

182.   No further exhaustion is necessary, and in any event, attempts at further exhaustion would be futile.

183.   The Department of Education's decisions with respect to Administrative Error PSLF (including TEPSLF) applications were arbitrary and capricious, in that the Department of Education failed to consider an important aspect of the problem and made clear errors in judgment.

184.   The Department of Education's denials of their administrative errors in evaluation Plaintiffs' and other Class Members PSLF (including TEPSLF) applications were arbitrary and capricious because those denials involved clear errors in judgment by the Defendants based on arbitrary errors in the processing applications and rendering decision on Plaintiff and other Class Members applications for PSLF (including TEPSLF) that was contrary to the evidence before it.

185.   The Department of Education's arbitrary and capricious PSLF and TEPSLF

determinations violated the APA and unlawfully deprived Plaintiff of a federal entitlement.

186.    Accordingly, Plaintiff requests an order vacating the PSLF denials and remanding to the Department of Education with specific instructions to approve Plaintiff and other Class Members PSLF applications as required under 20 U.S.C. § 1087e(m) or in the alternative, an order retaining jurisdiction and remanding to the Department of Education for further action with respect to Plaintiff and each Class Member, consistent with the APA.

## SECOND CAUSE OF ACTION
## INADEQUATE NOTICE OF DENIALS PURSUANT TO 5 U.S.C. § 555(e)

187.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs (and all subparts thereto) as if set forth fully herein.

188.    The Department of Education's failure to provide adequate and timely notice of any deficiencies and/or denial is a violation of the APA.

189.    The APA provides that "[p]rompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding."  5 U.S.C. § 555(e).  "Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial."  *Id.*

190.    The Department of Education's denials with respect to administrative errors in processing Plaintiffs', and Class Members, PSLF (including TEPSLF) applications violated 5 U.S.C. § 555(e) of the APA, which requires, at a minimum, "a brief statement of the grounds for denial," because the Department of Education failed to explain why administrative error in processing Plaintiffs', and Class Members, 120 payments did not qualify for loan forgiveness.

191.    The Department of Education's PSLF and TEPSLF denials with respect to their

administrative processing errors violated the APA by omitting any explanation as to why the

Department of Education determined that the 120 payments made by Plaintiff were not

qualifying, thereby failing to provide a basis upon which to conclude the denials were the product

of reasoned decision-making.

192.    Accordingly, Plaintiff request an order vacating the PSLF and TEPSLF denials.

**THIRD CAUSE OF ACTION**
**VIOLATION OF DUE PROCESS DUE TO ADMINISTRATIVE PROCESSING**
**ERRORS PURSUANT TO THE FIFTH AMENDMENT TO THE U.S.**
**CONSTITUTION**

193.    Plaintiff incorporates by reference all allegations contained in the preceding

paragraphs as if set forth fully herein.

194.    The Fifth Amendment provides: "No person shall . . . be deprived of life, liberty,

or property, without due process of law."

195.    Due process requires that, at a minimum, individuals receive notice and an

opportunity to be heard before they are deprived of property.

196.    Plaintiff and Class Members have constitutionally protected property interests in a

government benefit to which they are legitimately entitled, namely their statutory interest in PSLF

(including TEPSLF).

197.    Plaintiff contends that 20 U.S.C. § 1087e(m) contains mandatory language that the

Department of Education "shall cancel the balance of interest and principal due" for borrowers

who qualify for PSLF.

198.    Thus, 20 U.S.C. § 1087e(m) creates a cognizable property interest for applicants in

PSLF benefits.

199.    By enacting TEPSLF, the Consolidated Appropriations Act of 2018 created an additional statutory pathway to reach the property interest of PSLF benefits.

200.    Plaintiff and Class Members, were each deprived of a property interest when the Department of Education denied their applications for PSLF (including TEPSLF) due to the Department of Education's own processing errors.

201.    The Department of Education has denied these individuals their right to PSLF (including TEPSLF) without adequate process.

202.    The Due Process Clause requires the Department of Education to implement a process that gives applicants for PSLF (including TEPSLF) adequate notice of the reasons for its denials of PSLF and TEPSLF applications and a meaningful process to identify and account for issues related to applicants' eligibility for this statutory entitlement to PSLF (including TEPSLF), including payment counting issues.

203.    The Department of Education's current PSLF (including TEPSLF) application processes does not provide applicants with adequate notice of the reasons for their denial, including the evidence upon which the Department of Education relied in reaching its decision. Nor does the Department of Education's current application processes provide applicants a meaningful process to contest the denial, present additional evidence of their eligibility for PSLF (including TEPSLF) and ensure that the Department of Education will take account of its errors.

204.    Due process requires the Department of Education to adopt PSLF (including TEPSLF) processes to allow applicants to raise issues and be heard as to their eligibility, including allowing them to identify the Department of Education's errors.  Such additional

process is reasonable in light of the importance of the private interests affected—the PSLF benefit around which millions of borrowers have organized their lives.

205.    Borrowers are at risk of arbitrary and erroneous deprivation absent additional procedural safeguards. Such process would place only limited additional burden on the Department of Education relative to the importance of providing borrowers with the statutory entitlement of PSLF.

206.    To remedy these Due Process violations, Plaintiff and Class Members request:  (i) an order vacating the Department of Education's PSLF and TEPSLF denial action with respect to Plaintiff and each Class Member; (ii) an order requiring the Department of Education to provide (a) PSLF and TEPSLF applicants with adequate notice of the grounds for their denial, including the specific reasons for the denial, including but not limited to, information concerning the months of alleged missed or disqualifying payments and the reason the Department of Education did not count those payments, as well as the evidence that the Department of Education relied upon in denying the application; (b) a meaningful decision-making process that minimizes the risk of erroneous determinations, and includes a meaningful opportunity to identify and account for errors made by the Department of Education and/or the Title IV servicers, through which applicants may contest their denial and introduce evidence rebutting ED's determination; and (c) a written and reasoned explanation for its determination within a reasonable time period.

## FOURTH CLAIM FOR RELIEF
### ARBITRARY AND CAPRICIOUS AGENCY ACTION DUE TO SERVICER MISCONDUCT PURSUANT TO 5 U.S.C. § 706(2)

207.    Plaintiff incorporates by reference all allegations contained in preceding

paragraphs (and all subparts thereto) as if set forth fully herein.

208.     The Department of Education's decisions with respect to the Servicer Misconduct of Plaintiffs' PSLF (including TEPSLF) applications constituted final agency action.

209.     No further exhaustion is necessary and, in any event, attempts at further exhaustion would be futile.

210.     As set forth above, the Department of Education knows about Title IV servicers' widespread misrepresentations, which preclude borrowers from qualifying for loan forgiveness, but disregards those misrepresentations in denying PSLF (including TEPSLF).

211.     With respect to the Servicer Misconduct, the Department of Education's denial of PSLF (including TEPSLF) was arbitrary and capricious because the Department of Education failed to consider that the Plaintiffs' Title IV servicers engaged in misconduct resulting in Plaintiff achieving PSLF (including TEPSLF) requirements.

212.     The Department of Education's arbitrary and capricious PSLF and TEPSLF determinations violated the APA and unlawfully deprived these individuals of a federal entitlement.  Accordingly, Plaintiff requests an order vacating the Plaintiffs' PSLF (including TEPSLF) denials and remanding to the Department of Education with specific instructions to discharge their student loan debt pursuant to the Department of Education's general discharge authority under 20 U.S.C. § 1082(a)(4) and 20 U.S.C. § 1087a(b)(2) or in the alternative, an order retaining jurisdiction and remanding to the Department of Education for further action with respect to Plaintiff and Class Members, consistent with the APA.


**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF DUE PROCESS DUE TO SERVICER MISCONDUCT**

**PURSUANT TO THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**

213.    Plaintiff incorporates by reference all allegations contained in the preceding paragraphs (and all subparts thereto) as if set forth fully herein.

214.    The Fifth Amendment provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law."

215.    Due process requires that, at a minimum, individuals receive notice and an opportunity to be heard before they are deprived of property.

216.    Plaintiff and Class Members, have constitutionally protected property interests in a government benefit to which they are legitimately entitled, namely their statutory interest in PSLF (including TEPSLF).

217.    20 U.S.C. § 1087e(m) contains mandatory language requiring the Department of Education to cancel the balance of interest and principal due from borrowers who qualify for PSLF. Thus, 20 U.S.C. § 1087e(m) creates a cognizable property interest for applicants in PSLF benefits.  By enacting TEPSLF, the Consolidated Appropriations Act of 2018 created an additional statutory pathway to reach the property interest of PSLF benefits.

218.    Plaintiff was deprived of a property interest in PSLF when the Department of Education denied her application for PSLF (including through TEPSLF), even though her alleged ineligibility was due to misrepresentations made by Title IV servicers.  The Department of Education denied Plaintiff, and Class Members, their right to PSLF (including TEPSLF) without adequate process.

219.    The Due Process Clause requires the Department of Education to implement a process that gives PSLF (including TEPSLF) applicants adequate notice of the reasons for their

denial and a meaningful process to identify and account for issues related to applicants' eligibility for this statutory entitlement to PSLF, including misinformation provided by servicers.

220.    The Department of Education's current PSLF (including TEPSLF) application processes do not provide applicants with adequate notice of the reasons for their denial, including the evidence upon which the Department of Education relied in reaching its decision.  Nor do the Department of Education's current application processes provide applicants a meaningful opportunity to contest the denial, to present additional evidence of their eligibility for PSLF (including TEPSLF), and to ensure that the Department of Education will take account of Title IV servicers' misconduct.

221.    Due process requires the Department of Education to adopt PSLF (including TEPSLF) processes that allow applicants to raise issues and be heard as to their eligibility, including allowing them to identify the Title IV servicers' misconduct. Such additional process is reasonable in light of the importance of the private interests affected—the PSLF (including TEPSLF) benefit around which millions of borrowers have organized their lives.

222.    Borrowers are at risk of erroneous and arbitrary deprivation absent additional procedural safeguards. Such process would place only limited additional burden on the Department of Education relative to the importance of providing borrowers with the statutory entitlement of PSLF (including TEPSLF).

223.    To remedy these Due Process violations, Plaintiff and Class Members, request: (i) an order vacating the Department of Education's PSLF and TEPSLF denial actions with respect to Plaintiff and each Class Member; (ii) an order requiring the Department of Education to provide (a) PSLF and TEPSLF applicants with adequate notice of the grounds for their denial, including

the specific reasons for the denial, and including but not limited to, the evidence the Department of Education relied upon in denying the application; (b) a meaningful decision-making process to account for misrepresentations made by the Department of Education and/or Title IV servicers, through which applicants may contest their denial and introduce evidence rebutting the Department of Education's determination and/or demonstrate that the Department of Education should exercise its general discharge authority to issue forgiveness; and (c) a written and reasoned determination within a reasonable time period.

## SIXTH CLAIM FOR RELIEF
### ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS – UNJUST ENRICHMENT

224.     Plaintiff incorporates by reference all allegations contained in the preceding paragraphs (and all subparts thereto) as if set forth fully herein.

225.     As a result of Defendants' deceptive, misleading actions, as described above, Defendants were enriched at the expense of Plaintiff and the Class through having Plaintiff and Class Members continue to pay on loans that should have been forgiven.

226.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the Class.  Thus it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and Class Members for monies paid to Defendants as a result of the unfair, deceptive practices engaged in by the Department of Education and the Title IV servicing companies.

## SEVENTH CLAIM FOR RELIEF
### DECLATORY JUDGMENT

227.     Plaintiff incorporates by reference each and every prior and subsequent allegation

of this Complaint as if full restated here.

228.     The Declaratory Judgment Act ("DJA") states:

"In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."
 28 U.S.C. § 2201(a).

229.     In the case at hand, there is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, due to the imminence of harm facing Plaintiff and Class Members.  As set forth above, Class Members have already suffered denial of PSLF and TEPSLF benefits and have been required to continue making payments on loans that should have lawfully been forgiven, and instead the Department of Education has required Plaintiff and Class Members to continue making payments on loans which the Department of Education denied a discharge/forgiveness.

230.     Plaintiff seek a declaration that the Department of Education has breached a contract between itself and Plaintiff and Class Members by failing to follow Congressional mandates to forgive qualifying loans for public servants.

## EIGHTH CLAIM FOR RELIEF
## CONVERSION

231.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if full restated here.

232.     Plaintiff alleges that by failing to forgive Plaintiff and Class Members loans, and thereafter continuing to demand, and receive loan payments that should have been forgiven and

discharged, constituted a conversion of Plaintiff and Class Members funds.

233.     Plaintiff asserts that the money Plaintiff and Class Members deposited to the Department of Education, and which the Department of Education possessed and maintained control over, were funds that the Department of Education was not entitled to and that the possession thereof constituted a conversion of Plaintiff and Class Members money.

234.     Plaintiff contends that in addition to the funds improperly received by the Department of Education, the Department of Education additionally continues to charge interest, fees, and other charges against loans that by law, should have been forgiven, and that as a result thereof Plaintiff and Class Members have suffered damages, including, but limited to, a loss of money, credit reporting damage, increased borrowing costs and other damages to be proven at trial.

235.     Plaintiff alleges that as a direct and proximate conversion of her funds, and requirement that she continue to incur interest and make payments on a loan that should have been forgiven, she has been deprived of the possession and use of her money and has suffered anxiety, stress and other damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

*First*, a declaration that the Department of Education's denials of the Plaintiffs' PSLF (including TEPSLF) applications violate the Administrative Procedure Act and violate the Fifth Amendment's Due Process Clause.

*Second*, a declaration that the Department of Education's PSLF (including TEPSLF) application processes deprive Plaintiff and Class Members of their constitutional right to due

process by depriving them of a protected property right in PSLF.

*Third*, with respect to the First, Second, and Fourth Claims for Relief, an order vacating the Department of Education's PSLF (including TEPSLF) denial actions with respect to Plaintiff and Class Members.

*Fourth*, with respect to the First and Fourth Claims for Relief, an order remanding to the Department of Education with direction for the Department of Education to approve Plaintiff and each Class Members' requests for forgiveness, whether under 20 U.S.C. 1087e(m) or the Department of Education's general discharge authority, or in the alternative, an order retaining jurisdiction and remanding to the Department of Education for further action with respect to Plaintiff and each Class Member herein, consistent with the APA.

*Fifth*, with respect to the Third and Fifth Causes of Action, an order vacating the Department of Education's PSLF (including TEPSLF) denial actions with respect to Plaintiff and each Class Member.

*Sixth*, an order requiring the Department of Education to provide the Court with a status report detailing steps taken to comply with this Court's order, including copies of all instructions, guidelines, or other information sent to Title IV servicers.

*Seventh,* an order certifying the Class and, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), and appointing Plaintiff as representative of the Class and appointing the lawyers and law firm representing Plaintiff as counsel for the Class.

*Eighth,* for all recoverable compensatory, statutory and other damages sustained by Plaintiff and the Class, including disgorgement, unjust enrichment, and all other relief allowed under applicable law.

*Ninth*, granting Plaintiff and the Class awards of restitution and/or disgorgement of profits and ordering the Department of Education to immediately cease and desist from collection from Plaintiff and Class Member on loans that should have received a

discharge/forgiveness.

*Tenth,* an order granting a declaratory judgment against the Department of Education, and its servicing partners enjoining the Department of Education from denying PSLF and TEPSLF applications, cease collection activities, adjudicate Plaintiff and Class Member student loans paid.

*Eleventh*, such other and further relief as the nature of the case may require or as may be determined proper by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED July 17, 2019.

> Christensen Young & Associates, PLLC
> ___/s/ Steven A. Christensen___.
> Steven A. Christensen
> Cameron S. Christensen
> Christensen Young & Associates, PLLC
> 9980 So. 300 West, #200
> Sandy, Utah, 84070
> (801) 676-6447
> steven@christensenyounglaw.com
> cameron@christensenyounglaw.com