Tyler M. Hawkins (#13234)
**BALLARD SPAHR LLP**
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, UT 84111
Telephone: (801) 531-3000
hawkinst@ballardspahr.com

John C. Grugan (*pro hac vice* application forthcoming)
Aliza R. Karetnick (admitted *pro hac vice*)
Thomas F. Burke (admitted *pro hac vice*)
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
gruganj@ballardspahr.com
karetnicka@ballardspahr.com
burket@ballardspahr.com

*Attorneys for Defendant Pennsylvania*
*Higher Education Assistance Agency*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NELLIE H. CHRISTENSEN, MARC FUTTERMAN, GREGORY R. WILSON, on behalf of themselves and others similarly situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> ELISABETH DEVOS, in her official capacity as Secretary of Education, the UNITED STATES DEPARTMENT OF EDUCATION, NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC, NAVIENT CORPORATION, NELNET SERVICING, LLC, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY (PHEAA) DBA FEDLOAN SERVICING, AND UTAH HIGHER EDUCATION ASSISTANCE AUTHORITY (UHEAA), <br><br> **Defendants.** | **DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S MOTION TO DISMISS AMENDED COMPLAINT** <br><br><br> **Case No.:  2:19-cv-00509 DBB** <br><br> **Hon. David B. Barlow** |

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION**...................................................................................................... 1

**FACTUAL BACKGROUND** ................................................................................... 2

I.    The HEA, Federal Loans, and Loan Forgiveness ............................................ 2

II.   Plaintiffs' Allegations Against PHEAA ......................................................... 5

**LEGAL STANDARD** ............................................................................................... 7

**ARGUMENT** ............................................................................................................ 8

I.    Jurisdiction .................................................................................................... 8

      A.   The Court lacks subject matter jurisdiction because PHEAA is entitled to
           derivative sovereign immunity and because Plaintiffs have failed to
           adequately plead standing. ....................................................................... 8

           1.   PHEAA is entitled to dismissal under Rule 12(b)(1) on the basis of
                derivative sovereign immunity under *Yearsley*............................. 8

           2.   Plaintiffs have failed to establish standing................................... 12

II.   Plaintiffs' state-law claims are preempted. ................................................ 15

      A.   The HEA expressly preempts Plaintiffs' state-law claims. ................... 16

      B.   Plaintiffs' claims are also preempted under conflict preemption. ........ 16

III.  Plaintiffs' claims fail for several additional reasons. ................................. 18

      A.   Plaintiffs fail to state a claim under the FTCA. ................................... 19

      B.   Plaintiffs cannot sue under the Servicing Contracts, to which they are not
           parties. ................................................................................................ 19

      C.   Plaintiffs have failed to state claims under state-law consumer protection
           statutes................................................................................................ 20

           1.   Plaintiffs cannot state a claim under the Texas Deceptive Trade
                Practices Act (DTPA). ............................................................... 20

2.  Plaintiffs cannot state a claim under the Utah Consumer Sales Practices Act (UCSPA). ................................................................ 21

3.  Plaintiffs cannot state a claim under the District of Columbia Consumer Protection Procedures Act (CPPA). ......................................... 22

D.  Plaintiffs' remaining claims are not adequately pleaded under Maryland law. ........................................................................................ 22

1.  Conversion ...................................................................................... 22

2.  Breach of Implied Warranty of Authority ............................................. 23

3.  Tortious Interference with Contract ..................................................... 23

4.  Tortious Interference with Expectancy ................................................. 24

5.  Unjust Enrichment .......................................................................... 25

6.  Breach of Fiduciary Duty ................................................................. 26

7.  Negligence and Negligent Misrepresentation ......................................... 26

E.  The Court should dismiss the claims against PHEAA with prejudice ................. 27

**CONCLUSION** ............................................................................................. **27**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Airlines v. Christensen*,
   967 F.2d 410 (10th Cir. 1992) ...............................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................7

*Avington v. Bank of Am., N.A.*,
   No. 17-CV-21-JED-FHM, 2018 U.S. Dist. LEXIS 158987 (N.D. Okla. Sept.
   18, 2018) (unpublished) ........................................................................................19

*Ayala v. Am. Home Mortgage Servicing*,
   No. 2:11-cv-77-DB-PMW, 2011 U.S. Dist. LEXIS 85001 (D. Utah June 8,
   2011) (unpublished) ..............................................................................................21

*Ayres v. Ocwen Loan Servicing, LLC*,
   129 F. Supp. 3d 249 (D. Md. 2015) ......................................................................26

*Baron Fin. Corp. v. Natanzon*,
   471 F. Supp. 2d 535 (D. Md. 2006) ......................................................................24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................7

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*,
   353 F. Supp. 3d 1070 (D. Colo. 2018) .................................................................12

*Berneike v. Citimortgage, Inc.*,
   No. 2:11-cv-614 BCW, 2011 U.S. Dist. LEXIS 157181 (D. Utah Nov. 17,
   2011) (unpublished) ..............................................................................................21

*Bochenski v. M&T Bank*,
   No. ELH-14-1031, 2015 U.S. Dist. LEXIS 28976 (D. Md. Mar. 10, 2015)
   (unpublished) ........................................................................................................26

*Bowers v. Bank of Am., N.A.*,
   905 F. Supp. 2d 697 (D. Md. 2012) ......................................................................26

*Brereton v. Bountiful City Corp.*,
   434 F.3d 1213 (10th Cir. 2006) ............................................................................27

*United States ex rel. Brooks v. Stevens-Henager Coll.*,
  305 F. Supp. 3d 1279 (D. Utah 2018) ..................................................................13

*Busby v. Capital One, N.A.*,
  772 F. Supp. 2d 268 (D.D.C. 2011) ....................................................................22

*Butler v. Kempthorne*,
  532 F.3d 1108 (10th Cir. 2008) .............................................................................7

*Butters v. Vance Int'l, Inc.*,
  225 F.3d 462 (4th Cir. 2000) .............................................................................8, 9

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016) .............................................................................................8

*Casanova v. Ulibarri*,
  595 F.3d 1120 (10th Cir. 2010) .............................................................................7

*Chae v. SLM Corp.*,
  593 F.3d 936 (9th Cir. 2010) .........................................................15, 16, 17, 18

*Chesney v. TVA*,
  782 F. Supp. 2d 570 (E.D. Tenn. 2011) .................................................................8

*Clark v. Strad Energy Servs., USA, Ltd.*,
  No. 17-cv-1242-WJM-KMT, 2018 U.S. Dist. LEXIS 128942 (D. Colo. Aug.
  1, 2018) (unpublished) ....................................................................................18, 20

*Cunningham v. Gen. Dynamics Info. Tech.*,
  888 F.3d 640 (4th Cir. 2018) .....................................................................8, 9, 11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .............................................................................................12

*Doll v. Ford Motor Co.*,
  814 F. Supp. 2d 526 (D. Md. 2011) .....................................................................25

*English v. Gen. Elec. Co.*,
  496 U.S. 72 (1990) ................................................................................................16

*Farasat v. Wells Fargo Bank, N.A.*,
  913 F. Supp. 2d 197 (D. Md. 2012) .....................................................................26

*Forbes v. CitiMortgage, Inc.*,
  998 F. Supp. 2d 541 (S.D. Tex. 2014) ............................................................20, 21

*Free v. Bland*,
    369 U.S. 663 (1962) .................................................................................... 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................... 12

*GFF Corp. v. Assoc. Wholesale Grocers, Inc.*,
    130 F.3d 1381 (10th Cir. 1997) .................................................................... 6

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ...................................................................................... 16

*Hyland v. Navient Corp.*,
    No. 18cv9031 (DLC), 2019 U.S. Dist. LEXIS 113038 (S.D.N.Y. July 8, 2019)
    (unpublished) ............................................................................. 23, 24, 26

*Interface Kanner, LLC v. JPMorgan Chase Bank*,
    704 F.3d 927 (11th Cir. 2013) .................................................................... 19

*Johnson v. Wheeler*,
    492 F. Supp. 2d 492 (D. Md. 2007) ............................................................ 22

*Kan. Penn Gaming, LLC v. Collins*,
    656 F.3d 1210 (10th Cir. 2011) .................................................................. 13

*Kantsevoy v. LumenR LLC*,
    No. ELH-17-359, 2019 U.S. Dist. LEXIS 57138 (D. Md. Apr. 1, 2019)
    (unpublished) .............................................................................................. 24

*In re KBR, Inc.*,
    744 F.3d 326 (4th Cir. 2014) ........................................................................ 9

*Lower Ark. Valley Water Conservancy Dist. v. United States*,
    578 F. Supp. 2d 1315 (D. Colo. 2008) ........................................................ 14

*McNees v. Ocwen Loan Servicing, LLC*,
    No. 16-cv-01055-WJM-KLM, 2017 U.S. Dist. LEXIS 22985 (D. Colo. Feb.
    16, 2017) (unpublished) .............................................................................. 19

*MidCities Metro. Dist. No. 1 v. U.S. Bank N.A.*,
    44 F. Supp. 3d 1062 (D. Colo. 2014) .......................................................... 19

*Miller v. BAC Home Loans Servicing*,
    726 F.3d 717 (5th Cir. 2013) ...................................................................... 21

*Mushala v. U.S. Bank, N.A.*,
  No. 18-16800 (JDB), 2019 U.S. Dist. LEXIS 54039 (D.D.C. Mar. 29, 2019)
  (unpublished) ................................................................................................22

*Nova Health Sys. v. Gandy*,
  416 F.3d 1149 (10th Cir. 2005) ....................................................................13

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
  461 U.S. 190 (1983) .......................................................................................15

*Rector v. City & Cty. of Denver*,
  348 F.3d 935 (10th Cir. 2003) ......................................................................12

*Smallwood v. Nationstar Mortg., LLC*,
  No. PX-16-4008, 2018 U.S. Dist. LEXIS 72852 (D. Md. May 1, 2018)
  (unpublished) ................................................................................................25

*Smith v. Plati*,
  258 F.3d 1167 (10th Cir. 2001) .......................................................................7

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................................12

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .........................................................................................12

*Tarrant Reg'l Water Dist. v. Herrmann*,
  656 F.3d 1222 (10th Cir. 2011) ....................................................................16

*Texas v. United States*,
  523 U.S. 296 (1998) .......................................................................................15

*Winebarger v. PHEAA*,
  __ F. Supp. 3d __, No. 19-cv-1503, 2019 U.S. Dist. LEXIS 196821 (C.D. Cal.
  Aug. 21, 2019) ...................................................................................... *passim*

*In re World Trade Ctr. Disaster Site, Litig.*,
  521 F.3d 169 (2d Cir. 2008) ............................................................................9

*Yearsley v. W.A. Ross Construction Co.*,
  309 U.S. 18 (1940) ................................................................................ *passim*

**State Cases**

*Darcars Motors of Silver Spring, Inc. v. Borzym*,
  841 A.2d 828 (Md. 2004) ..............................................................................22

*Fix v. Flagstar Bank, FSB*,
   242 S.W.3d 147 (Tex. App. 2007)........................................................20

*Hall v. Barlow*,
   272 A.2d 386 (Md. 1971) ...................................................................23

*Hill v. Cross Country Settlements, LLC*,
   936 A.2d 343 (Md. 2007) ...................................................................25

*Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*,
   802 A.2d 1050 (Md. 2002) .................................................................26

*Kaser v. Fin. Prot. Mktg, Inc.*,
   831 A.2d 49 (Md. 2003) .....................................................................23

*Lloyd v. GMC*,
   916 A.2d 257 (Md. 2007) ...................................................................26

*Rosenblatt v. Exxon Co., U.S.A.*,
   642 A.2d 180 (Md. 1994) ...................................................................26

**Federal Statutes**

15 U.S.C. § 45 (Federal Trade Commission Act)................................2, 18, 19

28 U.S.C. § 1001 *et seq.* (Higher Education Act) ................................. *passim*

20 U.S.C. §§ 1071–1099c ...........................................................................2, 11

20 U.S.C. § 1078...........................................................................................16

20 U.S.C. §§ 1087a–1087j............................................................................3, 11

20 U.S.C. § 1091...........................................................................................16

20 U.S.C. § 1098g.........................................................................................16

44 U.S.C. § 1507.............................................................................................3

**State Statutes**

24 Pa. Stat. § 5101 .........................................................................................3

24 Pa. Stat. § 5102 .........................................................................................4

24 Pa. Stat. § 5105 .........................................................................................4

vii

District of Columbia Consumer Protection Procedures Act ....................................................18, 22

Maryland Consumer Protection Act ............................................................................................18

Texas Deceptive Trade Practices Act .............................................................................18, 20, 21

Utah Consumer Sales Practices Act...............................................................................18, 21, 22

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .............................................................................1, 7, 8

Federal Rule of Civil Procedure 12(b)(6) .........................................................................1, 7, 27

**Regulations**

34 C.F.R. § 685.208 .........................................................................................................................3

34 C.F.R. § 685.219 ............................................................................................................3, 6, 10

83 Fed. Reg. 10621 .......................................................................................................3, 11, 17

**Constitutional Provisions**

U.S. Constitution Article III.......................................................................................2, 12, 13, 15

**Other Authorities**

Restatement (Second) of Agency § 329...................................................................................23

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Pennsylvania Higher Education Assistance Agency (PHEAA), doing business as FedLoan Servicing, moves this Court for an Order dismissing the putative class-action claims against PHEAA with prejudice.

## INTRODUCTION

Plaintiffs Nellie H. Christensen, Marc Futterman, and Gregory R. Wilson have filed this lawsuit against the U.S. Department of Education (the Department) and four of its contractual student loan servicers, including PHEAA, based on alleged errors pertaining to the Public Service Loan Forgiveness (PSLF) program.  PHEAA's role in this suit is very limited: the Amended Complaint alleges that PHEAA has serviced the student loans of only one of the three named plaintiffs, Gregory Wilson, and contends only that PHEAA erred in servicing Wilson's account by providing an inaccurate tally of Wilson's progress toward loan forgiveness.

This Court lacks subject-matter jurisdiction over Wilson's claims against PHEAA for two reasons.  First, under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), PHEAA is entitled to derivative sovereign immunity, which applies where a federal contractor's actions have been authorized by the federal government pursuant to a valid grant of authority.  All of PHEAA's federal loan servicing operations are conducted pursuant to the express contractual directives of the Department, which promulgates regulations governing the PSLF program and retains final authority over loan forgiveness.  Consequently, just as the Department is immune from suit under these circumstances, so too is PHEAA.

Second, the PSLF program requires that a borrower, over the course of *at least* ten years, make 120 separate qualifying monthly student loan payments, while enrolled in a qualifying

1

repayment plan and working for a qualifying public interest employer, after which the balance of the borrower's student loans will be forgiven.  Until the borrower has made 120 qualifying payments, however, he has no vested interest in any financial benefit.  The Amended Complaint acknowledges that as of 2017, Wilson was not enrolled in a qualifying repayment plan and thus is at least eight years away from completing his 120 qualifying payments (if he completes them at all).  The result is that Wilson's claims against PHEAA are premature.  Until and unless Wilson qualifies for PSLF forgiveness, even arguably, he cannot establish the "actual and imminent" harm necessary for Article III standing.  *See Winebarger v. PHEAA*, __ F. Supp. 3d __, No. 19-cv-1503, 2019 U.S. Dist. LEXIS 196821, at *22–23 (C.D. Cal. Aug. 21, 2019) (dismissing PSLF-related claims for, among other reasons, plaintiffs' failure to establish standing).

Further, as set forth in greater detail below, Plaintiffs' state-law claims are preempted by federal law, and Plaintiffs fail to plead essential elements of their claims under the Federal Trade Commission Act, federal common law, Utah statutes, Texas statutes, District of Columbia statutes, and Maryland common law.  Strikingly, most of Plaintiffs' purported causes of action ignore that the only connection alleged between PHEAA and Plaintiffs is that PHEAA supposedly provided Wilson (*not* the other Plaintiffs) with an inaccurate tally of his qualifying payments.  Because the Amended Complaint alleges no facts supporting liability against PHEAA, the Court should dismiss the claims against PHEAA with prejudice.

## FACTUAL BACKGROUND

## I.     The HEA, Federal Loans, and Loan Forgiveness

Under the Higher Education Act (HEA), the Department has the authority to issue federal loans and grants to student borrowers.  *See* 20 U.S.C. §§ 1071–1099c.  In the 1990s, the federal

government began originating loans under the William D. Ford Direct Loan Program. *See* 20 U.S.C. §§ 1087a–1087j. Congress directed the Department to enter into contracts for "servicing" these loans and "such other aspects of the direct student loan program as the Secretary determines are necessary." 20 U.S.C. § 1087f(a), (b)(2), (4). Every aspect of the Direct Loan Program is highly regulated by the Department, including administration of loan repayment, 34 C.F.R. § 685.208, income-based repayment plans, *id.* § 685.209, deferments and forbearances, *id.* § 685.204–05, and "a carefully crafted disclosure regime specifying what information must be provided [to student loan borrowers]," 83 Fed. Reg. 10621.[1]

The PSLF program was created by Congress in 2007 and provides a conditional opportunity for student borrowers to seek forgiveness of their student loan balance. *See* 20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219; First Amended Complaint (FAC) at ¶¶ 5–6. Under the PSLF program, the federal government will forgive any remaining balance on a borrower's Direct Loans after *(a)* 120 on-time monthly payments; *(b)* made under a qualifying repayment plan; *(c)* while the borrower is working full-time; *(d)* for a qualifying public-service employer. 34 C.F.R. § 685.219; FAC ¶ 10. Because a borrower must make at least 120 monthly payments, the earliest a borrower could become eligible for PSLF relief is ten years after beginning to make qualifying payments. *Id.* § 685.219(c); FAC ¶ 11.

PHEAA was created in 1963 by the Commonwealth of Pennsylvania as "a body corporate and politic constituting a public corporation and government instrumentality." 24 Pa. Stat. § 5101. PHEAA's founding mission is to improve higher education opportunities for Pennsylvania

---

[1]    Federal statute provides that courts must take judicial notice of the contents of the Federal Register. 44 U.S.C. § 1507.

residents by funding student loans and grants.  24 Pa. Stat. §§ 5102, 5105.6.  Over time, PHEAA came not only to fund but also service student loans and grants.  *Id.* § 5104(1.1)(iii).  In 2009, PHEAA, doing business as FedLoan Servicing, was selected by the Department as one of several national servicers for the Direct Loans Program.  FAC ¶ 123; *see also* Exhibit 1, 2009 Servicing Contract (relevant excerpts only)).[2]

The Department later awarded PHEAA an exclusive contract to administer the PSLF program under the Department's close supervision.  FAC ¶¶ 194–99.  The Department bears "ultimate responsibility" for the PSLF program, including "for all key steps in the process of determining eligibility."  FAC ¶ 198.  PHEAA retains no discretion under its federal servicing contract because the Department "has never delegated final decision-making authority under the PSLF Program to [PHEAA] or any other entity."  FAC ¶ 198.  Further, the Department monitors PHEAA's performance under the Servicing Contract through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices; PHEAA, in turn, is "responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed."  (Ex. 1, 2009 Servicing Contract, Attach. A-1, at 7).  In other words, isolated servicing errors remediated at the direction of the Department do not constitute a breach of PHEAA's Servicing Contract and do not take PHEAA's performance outside of the Contract.

---

[2]     The attached excerpts of PHEAA's contract with the Department constitute a public record available on the Department's website.  *See* Loan Servicing Contracts, Federal Student Aid, *available at* studentaid.gov/data-center/business-info/contracts/loan-servicing (last accessed Jan. 21, 2020).

## II.      Plaintiffs' Allegations Against PHEAA

Although Plaintiffs Christensen, Futterman, and Wilson each purport to bring claims against PHEAA on behalf of themselves and four putative classes of borrowers, the Amended Complaint alleges no relationship between PHEAA and Christensen or Futterman.  It details only a few allegations with respect to Wilson, a resident of Maryland.  FAC ¶¶ 35–41, 93–94, 245–49.  Specifically, at some point before 2017, while his loans were being serviced by Defendant Navient, Wilson contends that he "notified Navient counselors that he specifically wanted to be in compliance with anything necessary to qualify for PSLF benefits."  FAC ¶ 36.  In 2017, his loans were transferred to PHEAA, after which he requested PHEAA "to advise him of how many qualifying payment[s] counted toward the program."  FAC ¶ 247–48.  Wilson was informed that "it would take 60 days to provide him with the number of qualifying payment[s]."  FAC ¶ 248.  Wilson "heard nothing from [PHEAA] within the 60 day period and began calling 2-3 times a month for the next 10 months, receiving inaccurate, contradicting and wrong information on the number of payments made."  FAC ¶ 249.  The Amended Complaint does not describe the information PHEAA provided or address the ways in which it was "inaccurate, contradicting and wrong."  At some point thereafter, PHEAA informed Wilson that for years he had been enrolled in the "wrong repayment plan," meaning that he had made no progress toward PSLF.  FAC ¶ 41.

The remaining allegations of the Complaint concerning PHEAA are either not tied to a specific Plaintiff, *see* FAC ¶¶ 194–228 (detailing PHEAA's general role in administering the PSLF program and related governmental reporting), or are too vague to determine either the Plaintiff or Defendant at issue, *see, e.g.*, FAC ¶ 95 (alleging that Defendants collectively "mislead the student borrowers, misrepresented material facts regarding eligibility requirements for PSLF loans, and/or

omitted providing critical, material information to Plaintiff's and class members regarding federal loans programs and PSLF"); FAC ¶¶ 128–31 (alleging, without factual support, that all Defendants acted individually, jointly, as principles, and as agents of one another, and knew or should have known about all other Defendants' alleged violations, and facilitated such violations).

The Amended Complaint also contains two important factual inconsistencies. First, Plaintiffs broadly allege that "each of the Plaintiffs made the requisite 120 + qualifying payments [to qualify for PSLF]," FAC ¶ 18, but this conclusory statement contradicts the allegation that Wilson was *not* enrolled in a qualifying repayment plan until at least 2017, which is a prerequisite to making qualifying payments, FAC ¶¶ 40–41. Second, the Amended Complaint alleges that the other two Plaintiffs sought to avail themselves of the PSLF program years before it was actually created. *See, e.g.*, FAC ¶ 88 (stating that Plaintiff Futterman "expressed he wanted to apply for the PSLF program" in 2005); FAC ¶ 32 (stating that he was eligible for loan forgiveness in 2015); FAC ¶ 28 (alleging Plaintiff Christensen "made the requisite 120 qualifying payments *starting in 2004*" (emphasis added), and requested loan forgiveness in 2014). Only payments made after October 1, 2007 potentially qualify for PSLF, *see* 34 C.F.R. § 685.219(c)(1)(iii), meaning that no person became eligible for PSLF loan forgiveness before October 2017. Based on these discrepancies, this Court should not credit any conclusory assertions concerning the number of qualifying payments made by Plaintiffs. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (recognizing a court need not credit contradictory allegations).

On this thin factual predicate, Plaintiffs purport to allege thirteen causes of action against PHEAA, including violation of federal, Utah, Texas, and District of Columbia statutes, breach of contract, conversion, breach of the implied warranty of authority, tortious interference with

contract, tortious interference with contract expectancy, unjust enrichment,[3] breach of fiduciary duty, negligence, and negligent misrepresentation.

## LEGAL STANDARD

In considering a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must consider only "well-pleaded facts . . . as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) (internal quotation marks and citation omitted). The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008).

When considering a motion to dismiss under Federal Rule 12(b)(6), a court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiffs. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where, as here, a pleading offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action," it will not survive a motion to dismiss under Federal Rule 12(b)(6). *Id.* (quoting *Twombly*, 550 U.S. at 555).

---

[3]     The unjust-enrichment cause of action is duplicated.  *See* FAC ¶¶ 365–67, 416–21.

## ARGUMENT

I.     **Jurisdiction**

    **A.     The Court lacks subject matter jurisdiction because PHEAA is entitled to derivative sovereign immunity and because Plaintiffs have failed to adequately plead standing.**

        **1.     PHEAA is entitled to dismissal under Rule 12(b)(1) on the basis of derivative sovereign immunity under *Yearsley*.**

Because PHEAA is a federal contractor administering Plaintiff Wilson's loans at the direction of the Department, the doctrine of derivative sovereign immunity shields PHEAA from suit for complying with the Department's directives and its Contract with the Department.

        **a.     Applicable Law**

"[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) (quotation omitted) (alteration in original).  Consequently, it is "well-settled law that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).  Such immunity derives from the "government's unquestioned need to delegate governmental functions," such that "[i]mposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Id.*  When claims against federal contractors are barred by derivative sovereign immunity, the proper course is to dismiss for lack of jurisdiction. *See, e.g.*, *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018); *Chesney v. TVA*, 782 F. Supp. 2d 570, 586 (E.D. Tenn. 2011).

Derivative immunity was first extended to private contractors in *Yearsley v. W.A. Ross Construction Co.*, where a landowner sued a contractor for damages when part of his land was washed out after the contractor built a river dike under a federal contract.  The Supreme Court held that the contractor was not answerable to the landowner because "the work which the contractor had done in the river bed was all authorized and directed by the Government of the United States" and "performed pursuant to the Act of Congress."  309 U.S. 18, 19 (1940) (internal quotation marks omitted).  Where the federal government's "authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of the Congress," the Supreme Court explained, "there is no liability on the part of the contractor" who performed as the government directed.  *Id.* at 20–21.  Courts have interpreted this as a two-part standard requiring proof that "(1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power."  *Cunningham*, 888 F.3d at 643 (quoting *In re KBR, Inc.*, 744 F.3d 326, 342 (4th Cir. 2014)).

> **b.    PHEAA serviced Plaintiff Wilson's federal loans in accordance with validly conferred contractual authorization.**

The first requirement of *Yearsley*—that the government authorized PHEAA's actions—involves a determination of whether PHEAA "exceeded [its] authority under [its] valid contract" or exceeded the "scope of [the] government directives."  *Butters*, 225 F.3d at 466; *In re World Trade Ctr. Disaster Site, Litig.*, 521 F.3d 169, 196 (2d Cir. 2008) (derivative immunity applies where "the acts of which the plaintiff complained fell within the scope of [the] . . . government directives").  Here, the Amended Complaint and documents relied on therein establish that PHEAA's alleged conduct falls directly within the scope of its contract with the Department and related directives.

As the Amended Complaint describes, the control the Department exercises over PHEAA is absolute.  The 2009 Servicing Contract specifies 124 enumerated obligations for PHEAA, many with dozens of sub-requirements.  Ex. 1, 2009 Servicing Contract, Attach. A-1, at 3–18.  The 2009 Servicing Contract also requires that PHEAA "will be responsible for maintaining a full understanding of all federal and state laws and regulations and FSA requirements and ensuring that all aspects of the service continue to remain in compliance as changes occur."  *Id.* at C.1.4.3. PHEAA has no discretion in the performance of its duties under the Contract, particularly with respect to its administration of the PSLF program and counting of payments thereunder.  *See id*; 34 C.F.R. § 685.219(c) (detailing PSLF eligibility requirements).

The Department's oversight of PHEAA's performance under the 2009 Servicing Contract also leaves no room for discretion.  As the Department has explained in the Federal Register:

> [T]he Department monitors servicer compliance with the Department's contracts, which include requirements related to customer service. These oversight efforts include, but are not limited to, call monitoring, process monitoring, and servicer auditing, conducted both remotely and on-site by the Department's office of Federal Student Aid (FSA). FSA has dedicated staff with the responsibility to ensure that servicers are adhering to regulatory and contractual requirements for servicing loans. For example, FSA reviews interactions between servicers and borrowers and compares the servicers' performance against a detailed Department checklist. FSA provides its performance evaluations to servicers through written reports and meetings and requires servicers to alter their practices when needed to correct deficiencies. FSA also maintains direct access to servicer systems and therefore can review individual borrower accounts to evaluate the servicers' treatment of those accounts against regulatory and contractual requirements.
>
> …
>
> FSA [also] maintains a Feedback System, which includes a formal process for borrowers to report issues or file complaints about their loan experiences, including problems with servicing. Borrowers may also elevate complaints to the FSA Ombudsman Group—a neutral and confidential resource available to borrowers to resolve disputes related to their loans.

83 Fed. Reg. at 10622.  PHEAA, in turn, is "responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed." (Ex. 1, 2009 Servicing Contract, Attach. A-1, at 7).

Here, Wilson alleges that PHEAA's PSLF count was inaccurate, FAC ¶ 249, but does not explain why the count was inaccurate, how PHEAA's conduct violated its federal contract or federal directives, or why PHEAA would not be able to remediate any alleged error under the supervision of the Department while remaining fully within the scope of its contract.  As a result, the Amended Complaint provides no basis to conclude that PHEAA's administration of Wilson's federal student loans, and the computation and disclosure of his PSLF tally as described in the Amended Complaint, falls outside the scope of PHEAA's authority under its Servicing Contract.

> ### c.   The Department validly conferred authority to PHEAA to administer the student loans.

PHEAA also meets *Yearsley*'s second element—that the government "validly conferred" authorization.  "Authorization is 'validly conferred' on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization." *Cunningham*, 888 F.3d at 646–47 (citing *Yearsley*, 309 U.S. at 20).  Under the HEA, Congress authorized the Department to issue a variety of federal loans and grants to borrowers, including loans under the William D. Ford Direct Loan Program.  20 U.S.C. §§ 1071-1099c.  Congress also empowered the Department to enter into contracts for "servicing" these loans and "such other aspects of the direct student loan program as the Secretary determines are necessary."  20 U.S.C. § 1087f(a), (b)(2), (4).  Pursuant to this statutory mandate, the Department contracted with PHEAA to service federal loans and administer the PSLF program.

Because the Department validly conferred its authorization for PHEAA to service federal loans, PHEAA satisfies the second requirement of *Yearsley* immunity analysis. The Amended Complaint should be dismissed against PHEAA based on derivative sovereign immunity.

### 2.  Plaintiffs have failed to establish standing.

It is well-settled that named plaintiffs in class actions must demonstrate standing. *Rector v. City & Cty. of Denver*, 348 F.3d 935, 937 (10th Cir. 2003). "In a class action, the named plaintiffs must allege an actual injury, not an 'injury [that] has been suffered by other, unidentified members of the class.'" *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*, 353 F. Supp. 3d 1070, 1089 (D. Colo. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016)). "Each plaintiff must 'demonstrate standing for each claim he seeks to press' and 'for each form of relief' sought." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

A federal district court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). A suit brought by a plaintiff without Article III standing is not a "case or controversy" and must be dismissed. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

Here, Plaintiffs lack standing because they have not alleged an injury-in-fact that is "fairly traceable" to PHEAA and, to the extent Wilson has alleged a "fairly traceable" injury, Wilson's injury is too speculative and not ripe.

### a.  Plaintiffs lack standing because they have not alleged an injury-in-fact "fairly traceable" to PHEAA.

For an injury-in-fact to be fairly traceable, Article III requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."  *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005).  Here, Plaintiffs have not alleged injuries "fairly traceable" to PHEAA.

First, the Amended Complaint provides no factual allegations connecting PHEAA with Christensen or Futterman.  At most, the Amended Complaint contains vague recitations of Plaintiffs' causes of action that, in conclusory fashion, link *all* Plaintiffs with *all* Defendants.  *See, e.g.*, FAC ¶¶ 366, 374, 381, 389–91, 401, 403, 410, 413, 418, 423–27, 429, 436, 441, 450–51, 454, 459.  The 319 paragraphs of factual allegations set forth beforehand, though, state only that PHEAA provided inaccurate information to *Wilson*.  FAC ¶ 249.  "Where multiple defendants are involved, '[i]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her.'"  *United States ex rel. Brooks v. Stevens-Henager Coll.*, 305 F. Supp. 3d 1279, 1292 (D. Utah 2018) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).  Because the Amended Complaint fails to allege any nonconclusory conduct against Christensen and Futterman attributable to PHEAA, those Plaintiffs have not stated facts establishing standing and the Court should dismiss their claims.

Second, Plaintiff Wilson also does not allege an injury-in-fact fairly traceable to PHEAA. He alleges that between 2012 and 2017, his loans were serviced by Navient, FAC ¶¶ 35–41, and that during this time, he was told that he was "on track" for loan forgiveness, FAC ¶¶ 37, 94.  He contends that later, after being transferred to PHEAA, he was told that he had been in the "wrong

13

repayment plan" during his time with Navient, and that none of his previous loan payments counted toward PSLF.   FAC ¶¶ 41, 94.   At some time after 2017, PHEAA provided "inaccurate" information to Wilson about his progress toward PSLF.   FAC ¶ 249.   On that basis, Wilson (along with both other Plaintiffs, against all Defendants) alleges the following harms: "(i) excess payments under repayment plans or for loans that did not qualify for PSLF; (ii) unpaid interest added to the principal balance; and (iii) the loss of the benefit of PSLF by individuals who would have otherwise qualified for PSLF but for Defendant Loan Servicer's misconduct."   FAC ¶¶ 78, 382, 392, 414, 418, 432, 437, 444, 452, 458.

Wilson does not explain, though, how PHEAA's alleged disclosure of an inaccurate qualifying payment tally could result in excess repayments, additional interest, or the loss of a PSLF benefit.   Indeed, Wilson admits that he was in the "wrong repayment plan" for PSLF until 2017, FAC ¶ 41, meaning that he would not be eligible for loan forgiveness until at least 2027, and could not have made excess payments, accrued unwarranted interest, or missed out on PSLF forgiveness before then.   Because Wilson has not alleged any harm that is fairly traceable to PHEAA, the Court lacks subject matter jurisdiction over his claims against PHEAA.

> **b.** **The possibility that Wilson will overpay for loan forgiveness is too speculative to confer standing.**

"Allegations of possible future injury do not satisfy standing requirements, and a threatened injury must be 'certainly impending' to constitute an injury in fact."   *Lower Ark. Valley Water Conservancy Dist. v. United States*, 578 F. Supp. 2d 1315, 1325 (D. Colo. 2008).   For example, in *Winebarger*, the Central District of California rejected that student borrowers had suffered an injury-in-fact where they claimed they had received incorrect PSLF qualifying payment counts, but conceded that even with a correct payment count, they could not obtain loan forgiveness until

some distant point in the future.  2019 U.S. Dist. LEXIS 196821, at *20–23.  The *Winebarger* court reasoned that because obtaining PSLF relief was premised on many different unknowns, including whether the borrower would make all 120 qualifying payments and continue working for a qualifying employer, any injury was too speculative to meet the Article III standard.  *Id.*

Here, like the borrowers in *Winebarger*, Wilson is indisputably not yet eligible for PSLF relief.  FAC ¶¶ 40–41 (explaining that Wilson made no qualifying payments until at least 2017).  Wilson may have overpaid for PSLF relief or accrued unnecessary interest only if he ultimately obtains PSLF relief.  Because Wilson cannot do that without years of additional on-time payments on a qualifying repayment plan while working for a qualifying employer, his alleged harm is too speculative to be an injury-in-fact and his claims should be dismissed.[4]

## II.   Plaintiffs' state-law claims are preempted.

The Supremacy Clause states that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."  *Free v. Bland*, 369 U.S. 663, 666 (1962).  Although no court within the Tenth Circuit has addressed whether the HEA preempts Plaintiffs' state-law claims, other courts have recognized that the HEA preempts state-law claims based on express preemption and conflict preemption.  *See Chae v. SLM*

---

[4]     The Court should also dismiss Wilson's claims as unripe because they are based upon "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and quotation marks omitted).  Courts consider two factors in the ripeness analysis:  (1) whether delayed review of the issue would cause hardship to the parties and (2) whether the issues are fit for judicial decision or would benefit from further factual development.  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983).  In *Winebarger*, the district court held that claims based on potential overpayment in seeking PSLF relief were not ripe where plaintiff might or might not make further payments necessary for loan forgiveness.  2019 U.S. LEXIS 196821, at *23–24.

*Corp.*, 593 F.3d 936, 942 (9th Cir. 2010); *Winebarger*, 2019 U.S. Dist. LEXIS 196821, at \*25–29.

**A.    The HEA expressly preempts Plaintiffs' state-law claims.**

Express preemption applies where Congress has stated in the statutory language that its enactments preempt state law.  *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).  In the HEA, Congress enacted several express preemption provisions applicable to federal loans.  *See, e.g.*, 20 U.S.C. §§ 1078(d), 1091a(a)(2)(B), 1091a(b)(1)–(3), 1098g.  Relevant here, 20 U.S.C. § 1098g provides that Direct Loans "shall not be subject to *any* disclosure requirements of *any* State law." (emphasis added).  Thus, where a plaintiff's claims are based on inadequate disclosures of information or misrepresentations related to federal loans, courts have held the claims are preempted.  *Winebarger*, 2019 U.S. Dist. LEXIS 196821, at \*26; *Chae*, 593 F.3d at 942–43.

Here, the Amended Complaint's only specific allegations pertaining to PHEAA states that PHEAA allegedly provided "inaccurate, contradicting and wrong information on the number of payments [Wilson] made."  FAC ¶ 249.  Because these allegations relate solely to the manner and content of PHEAA's disclosure of information, Plaintiffs' state-law claims are expressly preempted.

**B.    Plaintiffs' claims are also preempted under conflict preemption.**

Conflict preemption is implicit preemption of state law that occurs when either (1) compliance with both federal and state regulations is a "physical impossibility" or (2) state law "stand[s] 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1242 (10th Cir. 2011) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

16

As recognized by the Ninth Circuit, through the HEA, Congress provided "a clear command for uniformity." *Chae*, 593 F.3d at 945. Speaking to Congress's objectives for the Federal Family Education Loan Program, *Chae* noted that "one need not have an advanced degree in risk management and financial practices to believe . . . that exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans." *Id.* (citation and quotation marks omitted). The same uniformity concerns motivated the Direct Loan Program. *Id.*; *see also* 83 Fed. Reg. at 10621 ("[T]he purpose of the Direct Loan Program [was] to establish a uniform, streamlined, and simplified lending program managed at the Federal level."). Thus, the HEA embodies an "unmistakable command" from Congress "to implement the student-loan statutes" with "a set of rules that will apply across the board." *Chae*, 593 F.3d at 945.

The Department agrees with *Chae*, both generally and specifically with respect to the Direct Loan Program. *See* 83 Fed. Reg. at 10621 (explaining that "there is no question that the imposition of liability on Government contractors will directly affect the terms of Government contracts, at the very least by raising the price of such contracts, and the interests of the United States will be directly affected" (citation and quotation marks omitted)).

Here, Plaintiffs' state-law claims would undermine Congress's objective of uniformity. As Plaintiffs' lawsuit demonstrates, numerous state-law claims can rest on alleged acts or omissions. With the HEA, Congress did not call on the courts of fifty states—interpreting myriad causes of action—to determine whether loan servicers' representations and conduct are adequate. Rather, it envisioned that such questions would be resolved by federal law—embodied by the Department's regulation over and contracts with loan servicers. Like the claims held to be preempted in *Chae*,

17

Plaintiffs accuse PHEAA of inadequately disclosing information.  *See, e.g.*, FAC ¶¶ 46 (claiming

PHEAA failed "to disclose material facts"), 249–50, 390, 394, 431, 441–43, 450–51, 455–57, 459.

Thus, the Court should adopt the reasoning applied in *Chae* and hold the HEA preempts all of the

state-law claims brought by Plaintiffs as a matter of conflict preemption.  *See Winebarger*, 2019

U.S. Dist. LEXIS 196821, at *26–29 (holding state-law claims based on inadequate disclosure of

qualifying payment counts "are preempted as a result of conflict preemption").

**III.    Plaintiffs' claims fail for several additional reasons.**

  Plaintiffs allege thirteen claims for relief against PHEAA.  Plaintiffs bring one claim under

the FTCA, 15 U.S.C. § 45, a breach-of-contract claim under federal common law, and the

remaining eleven claims under state law.  Plaintiffs' state-law claims include: (1) violation of the

Utah Consumer Protect Act; (2) violation of the Texas Deceptive Trade Practices-Consumer

Protection Act; (3) violation of the Washington D.C. Consumer Protection Procedures Act; (4)

conversion; (5) breach of the implied warranty of authority; (6) tortious interference with contract;

(7) tortious interference with contract expectancy; (8) unjust enrichment; (9) breach of fiduciary

duty; (10) negligence; and (11) negligent misrepresentation.[5]

  Although the Amended Complaint does not identify which state's law applies to the

common-law claims against, PHEAA concludes that Maryland law is applicable because only

Plaintiff Wilson (a resident of Maryland) alleges nonconclusory facts relative to PHEAA.  *See*

*Clark v. Strad Energy Servs., USA, Ltd.*, No. 17-cv-1242-WJM-KMT, 2018 U.S. Dist. LEXIS

---

[5] Plaintiffs allude to unspecified Defendants violating "the Maryland Consumer Protection Act, Md. Code Ann. Com. Law § 13-301 *et seq*," and breaching the Servicing Contract in violation of Plaintiffs' rights as third-party beneficiaries, FAC ¶ 77, but do not actually plead those causes of action.

128942, at *11 (D. Colo. Aug. 1, 2018) (unpublished) ("[A] plaintiff lacks standing to bring class claims on behalf of a class under the laws of states to which plaintiff has never been subject or where plaintiff has never resided.").

### A.   Plaintiffs fail to state a claim under the FTCA.

Plaintiffs allege a claim under the FTCA, 15 U.S.C. § 45, FAC ¶ 449, but "[t]here is no private right of action to enforce the provisions of that statute." *Avington v. Bank of Am., N.A.*, No. 17-CV-21-JED-FHM, 2018 U.S. Dist. LEXIS 158987, at *11 (N.D. Okla. Sept. 18, 2018) (unpublished) (citing *Am. Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992)); *see also McNees v. Ocwen Loan Servicing, LLC*, No. 16-cv-01055-WJM-KLM, 2017 U.S. Dist. LEXIS 22985, at *8 (D. Colo. Feb. 16, 2017) (unpublished) (recognizing "[t]he FTC Act empowers the Federal Trade Commission alone to enforce the prohibition" against "[u]nfair methods of competition in or affecting commerce").  Therefore, Plaintiffs' FTCA claim should be dismissed.

### B.   Plaintiffs cannot sue under the Servicing Contracts, to which they are not parties.

"[O]nly a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract, and . . . Government contracts . . . 'often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.'" *MidCities Metro. Dist. No. 1 v. U.S. Bank N.A.*, 44 F. Supp. 3d 1062, 1069 (D. Colo. 2014) (quoting *Interface Kanner, LLC v. JPMorgan Chase Bank*, 704 F.3d 927, 933 (11th Cir. 2013)).  Here, Plaintiffs do not identify any facts or language of the servicing contract between PHEAA and the Department that would allow a student borrower to sue to enforce it.  *See Winebarger*, 2019 U.S. Dist. LEXIS 196821, at *33–34 (holding the plaintiffs "cannot . . . allege any facts or point to any language in the Servicing Contracts . . . that even arguably would allow

a borrower to sue to enforce the Servicing Contracts").  Thus, Plaintiffs' breach-of-contract claim

against PHEAA fails to state a claim.

C.     **Plaintiffs have failed to state claims under state-law consumer protection statutes.**

The Amended Complaint alleges no connection between Wilson (the only plaintiff alleging

he was personally affected by PHEAA's conduct) and Utah, Texas, or District of Columbia.  Yet,

Plaintiffs collectively bring claims based on Utah's, Texas's, and District of Columbia's respective

consumer protection statutes.  The disconnect between Wilson (a resident of Maryland) and these

jurisdictions is alone a sufficient basis for the Court to dismiss Plaintiffs' consumer protection

claims.  *See Clark*, 2018 U.S. Dist. LEXIS 128942, at *12 ("[A] plaintiff lacks standing to bring

class claims on behalf of a class under the laws of states to which plaintiff has never been subject

or where plaintiff has never resided.").  But to the extent the Court finds Wilson or the other

Plaintiffs have alleged sufficient facts to invoke Utah, Texas, or District of Columbia's statutes,

the claims nonetheless fail.

1.     **Plaintiffs cannot state a claim under the Texas Deceptive Trade Practices Act (DTPA).**

To state a claim under the Texas DTPA,[6] a plaintiff must allege: "(1) the plaintiff is a

consumer; (2) the defendant engaged in false, misleading or deceptive acts; and (3) these acts

constituted a producing cause of the consumer's damages."  *Forbes v. CitiMortgage, Inc.*, 998 F.

Supp. 2d 541, 551 (S.D. Tex. 2014) (citations omitted).  A plaintiff is a "consumer" if he

(1) "'seek[s] or acquire[s] goods or services by purchase or lease'" and (2) "'the good or services

---

[6]     The Amended Complaint does not cite the section of the Texas DTPA that Plaintiffs allege PHEAA violated.

purchased or leased . . . form the basis of the complaint.'"  *Id.* (quoting *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 157 (Tex. App. 2007)).  The DTPA defines goods as "tangible chattels or real property purchased or leased for use" and defines services as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."  Tex. Bus. & Com. Code Ann. § 17.45(1), (2).  "Usually a loan transaction cannot be challenged under the DTPA because the lending of money is not a 'good' or 'service' for purposes of consumer status" unless the "mortgagor's primary objective was to acquire a good or service, and that good or service forms the basis of the complaint."  *Forbes*, 998 F. Supp. 2d at 552 (citing *Miller v. BAC Home Loans Servicing*, 726 F.3d 717, 725 (5th Cir. 2013)).

Here, Plaintiffs are not "consumers" under the DTPA because the lending of money is not a qualifying good or service, and the Amended Complaint does not allege facts rendering the "primary objective" exception applicable.  *See Forbes*, 998 F. Supp. 2d at 552 (holding borrowers could not establish consumer status under the DTPA).  Thus, Plaintiffs' DTPA claims fail.

### 2.    Plaintiffs cannot state a claim under the Utah Consumer Sales Practices Act (UCSPA).

The UCSPA, too, is inapplicable to loan servicers.  *See Ayala v. Am. Home Mortgage Servicing*, No. 2:11-cv-77-DB-PMW, 2011 U.S. Dist. LEXIS 85001, at *8 (D. Utah June 8, 2011) (unpublished) (citing Utah Code Ann. § 13-11-3(2)(a)) (finding that "a mortgage loan is not a '[c]onsumer transaction' within the scope of the UCSPA," and that loan servicers are not "suppliers" under the UCSPA); *see also Berneike v. Citimortgage, Inc.*, No. 2:11-cv-614 BCW, 2011 U.S. Dist. LEXIS 157181, at *9–10 (D. Utah Nov. 17, 2011) (unpublished) (same).

Here, as with the loan servicers in *Ayala* and *Berneike*, PHEAA serviced Wilson's student loans, which is not a "consumer transaction" under the UCSPA because it is not a sale or

disposition of funds or of the note.  Further, the Amended Complaint does not allege that PHEAA was an originator of the loan and, thus, PHEAA cannot be a "supplier" subject to the UCSPA.  As a result, the Court should dismiss Plaintiffs' claims under the UCSPA.

### 3. Plaintiffs cannot state a claim under the District of Columbia Consumer Protection Procedures Act (CPPA).

Loan servicers are not "merchants" under the D.C. CPPA regardless of whether they are also debt collectors.  *See Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (dismissing CPPA claim because the defendant "was limited to serving as the loan servicer, at best"); *see also Mushala v. U.S. Bank, N.A.*, No. 18-16800 (JDB), 2019 U.S. Dist. LEXIS 54039, at *25 (D.D.C. Mar. 29, 2019) (unpublished) (dismissing CPPA claim against loan servicer because it did not "provide[] [the plaintiff] with any goods or services" and the plaintiff was not a consumer of the loan servicer) (citation and quotations marks omitted).

Here, because PHEAA cannot be a "merchant" under the CPPA, Plaintiffs' CPPA claim fails.  *See Winebarger*, 2019 U.S. Dist. LEXIS 196821, at *35–36 (holding PHEAA is "not subject to liability under the CPPA" as a loan servicer).

### D. Plaintiffs' remaining claims are not adequately pleaded under Maryland law.

### 1. Conversion

Conversion involves "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004) (citation and quotation marks omitted).  "As a general rule, money, i.e., currency, is not subject to a claim of conversion unless a plaintiff seeks to recover specific segregated or identifiable funds." *Id.* at 833 n.3 (citations omitted); *see also Johnson v. Wheeler*, 492 F. Supp. 2d 492, 510 (D. Md. 2007).

Here, the subject of Plaintiffs' conversion claim is "money Plaintiffs and Class Members deposited to the Department . . . and Defendant Loan Servicers." FAC ¶ 374. Because Plaintiffs do not allege that any segregated or identifiable money was converted (as opposed to money that has been commingled with other funds), their conversion claim fails.

### 2.      Breach of Implied Warranty of Authority

Section 329 of the Restatement (Second) of Agency provides: "A person who purports to make a contract, conveyance or representation on behalf of another who has full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority." *See Hall v. Barlow*, 272 A.2d 386, 396 (Md. 1971) (citing Restatement (Second) of Agency § 329). Plaintiffs have not alleged that PHEAA entered into a contract or made a conveyance on behalf of the Department, and representations about PHEAA's "expertise and its role in offering advice do not establish that [PHEAA] held itself out as an agent with the authority to bind the Department." *Hyland v. Navient Corp.*, No. 18cv9031 (DLC), 2019 U.S. Dist. LEXIS 113038, at *23–25 (S.D.N.Y. July 8, 2019) (unpublished) (dismissing a Maryland breach of an implied warranty of authority claim with similar allegations); *see* FAC ¶ 389. Thus, Plaintiffs fail to state a claim for breach of the implied warranty of authority.

### 3.      Tortious Interference with Contract

The elements required to establish the tort of wrongful interference with contractual or business relations in Maryland are "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg, Inc.*, 831 A.2d 49, 53 (Md.

2003) (citation and quotation marks omitted).  A borrower alleging that a loan servicer tortuously interfered with a Master Promissory Note ("MPN") contract must allege with specificity *how* the loan servicer "intentionally procured the Department's breach of any provision of the MPN." *Hyland*, 2019 U.S. Dist. LEXIS 113038, at *26–27.

Here, Plaintiffs cite to no provision of the MPN contracts that were allegedly breached due to PHEAA's conduct.  Indeed, "alleged misrepresentations [that] may have made it more difficult for the [P]laintiffs to take advantage of their contractual rights . . . does not establish that the Department breached its contractual obligations to borrowers."  *Id.* at *27.  As a result, Plaintiffs have failed to state a claim for tortious interference with contract.

### 4.    Tortious Interference with Expectancy

Maryland courts generally consider a claim for tortious interference with expectancy to be identical to a claim of tortious interference with prospective economic relationship.  *See Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 545 n.10 (D. Md. 2006) (citing authority).  This claim has the same elements as a claim for tortious interference with contract, but requires identification of "a possible future relationship which is likely to occur, absent the interference, with specificity."  *Kantsevoy v. LumenR LLC*, No. ELH-17-359, 2019 U.S. Dist. LEXIS 57138, at *67–69 (D. Md. Apr. 1, 2019) (unpublished) (citations and quotation marks omitted).

Plaintiffs appear to base their claim for tortious interference on a "statutorily created expectancy."  FAC ¶¶ 409–10, 412–15.  Such a claim "is not a recognized cause of action, nor does it have any basis in law."  *Hyland*, 2019 U.S. Dist. LEXIS 113038, at *25–27 (analyzing the claim under Maryland law).  Further, and in any event, it is not "likely" that Plaintiffs' loans will be or would have been forgiven absent the alleged interference—such relief is highly contingent

on additional performance by Plaintiffs.  *See supra* § I.A.2.b.  Thus, Plaintiffs have not alleged a claim for tortious interference with an expectancy.

### 5.    Unjust Enrichment

"For a common law claim of unjust enrichment, Plaintiffs must plausibly allege that (1) a benefit was conferred on the Defendants; (2) Defendants knew of or appreciated the benefit; and (3) Defendants' acceptance or retention of the benefit under the circumstances was inequitable absent payment . . . for the value of the benefit."  *Smallwood v. Nationstar Mortg., LLC*, No. PX-16-4008, 2018 U.S. Dist. LEXIS 72852, at *5 (D. Md. May 1, 2018) (unpublished) (citing *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 357 (Md. 2007)).  Where a contract concerning the "subject matter" of the unjust enrichment claim exists, a plaintiff cannot bring an unjust enrichment claim.  *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551–52 (D. Md. 2011).

Plaintiffs' unjust-enrichment claim fails for two reasons.  First, the operative relationships are already governed by contracts.  *See* FAC ¶¶ 123, 194–98 (describing PHEAA's federal contractual obligations); FAC ¶¶ 7, 171, 396 (describing MPNs).  Because Plaintiffs do not allege that any of these contracts are invalid, Plaintiffs' unjust enrichment claim fails.  Second, Plaintiffs have provided no particularity as to *which* Defendants have been unjustly enriched and *to what extent*.  *See Smallwood*, 2017 U.S. Dist. LEXIS 209854, at *19 ("[T]he Amended Complaint is nonetheless deficient for failing to identify *which Defendant(s)* allegedly assessed the fees or *when* the fees were assessed.  Without sufficient particularity in this regard, Defendants cannot be put on notice as to which among them must defend this claim, nor can this Court determine whether the claim has been brought within the limitations period.").  Plaintiffs' vague attempts to claim unjust enrichment in a scenario covered by binding contracts necessarily fail.

### 6.        Breach of Fiduciary Duty

In Maryland, "although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty." *Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*, 802 A.2d 1050, 1051 n.1 (Md. 2002).  Thus, "[t]o the extent that the plaintiffs bring a claim for breach of fiduciary duty under Maryland law, that claim is simply duplicative of their negligence claim."  *Hyland*, 2019 U.S. Dist. LEXIS 113038, at *29.  As a result, Plaintiffs cannot separately recover on a claim for breach of fiduciary duty.

### 7.        Negligence and Negligent Misrepresentation

"To prevail upon a claim of negligence, the plaintiff must show that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the plaintiff suffered actual loss, and (4) the loss was proximately caused by the breach."  *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 207 (D. Md. 2012) (citing *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994)); *see also Lloyd v. GMC*, 916 A.2d 257, 273 (Md. 2007) (providing a similar standard for a negligent misrepresentation claim).  Maryland courts have rejected that a loan servicer owes any duty of care to a borrower.  *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 703 (D. Md. 2012); *see also Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 275 (D. Md. 2015) (deeming it a "well-established rule" that servicers "do[] not owe a tort duty to [their] loan customer[s]") (citation omitted); *Bochenski v. M&T Bank*, No. ELH-14-1031, 2015 U.S. Dist. LEXIS 28976, at *74–75 (D. Md. Mar. 10, 2015) (unpublished).

Because Plaintiffs have not alleged any facts that would give rise to a tort duty of care owed by PHEAA to Plaintiffs, their negligence and negligent misrepresentation claims fail.

**E.     The Court should dismiss the claims against PHEAA with prejudice.**

To the extent the Court rules that Plaintiffs' state-law claims are preempted and Plaintiffs' federal claims fail under Rule 12(b)(6), or that all of Plaintiffs' claims fail to state a claim under Rule 12(b)(6), the Court should dismiss the Complaint against PHEAA with prejudice for futility. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

## CONCLUSION

PHEAA is entitled to derivative sovereign immunity, Plaintiffs lack standing, their state-law claims are preempted, and they have otherwise failed to allege crucial elements of each claim. To the extent the Court rules on PHEAA's immunity or the merits of Plaintiffs' claims, the Amended Complaint should be dismissed with prejudice.

DATED this 24th day of January, 2020.

**BALLARD SPAHR LLP**

By: /s/ Tyler M. Hawkins
    John C. Grugan
    Aliza R. Karetnick
    Thomas F. Burke
    1735 Market St., 51st Floor
    Philadelphia, PA 19103

    Tyler M. Hawkins
    One Utah Center, Suite 800
    201 South Main Street
    Salt Lake City, UT 84111

    *Attorneys for Pennsylvania Higher*
    *Education Assistance Agency*